## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **CHUNG CHUI WAN** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **No. 20-cv-3233** |
| | ) | |
| **MICHEL DALE DEBOLT** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on Respondent's motion to dismiss (d/e 14).  For the reasons stated below, the motion to dismiss is DENIED.

## I. BACKGROUND

On September 8, 2020, Petitioner filed her Complaint and Petition (d/e 1) for the return of her and Respondent's minor children pursuant to the Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA").  See d/e 1. Petitioner is a citizen of Hong Kong and the United Kingdom. Petitioner filed the action to secure the return of the two minor

children, T.D. and A.D., from Illinois to Hong Kong.  The children were born in Hong Kong and are citizens of Hong Kong and the United States.  Petitioner alleges that on July 18, 2020, Respondent traveled with the minor children from Hong Kong to Shelbyville, Illinois to visit relatives.  Petitioner agreed to the trip.  Petitioner contends that Respondent originally said the minor children would return on August 17, 2020.  However, Respondent thereafter told Petitioner that he and the children will not return to Hong Kong.

On October 7, 2020, Respondent filed a motion to dismiss (d/e 14) and memorandum of law in support (d/e 15) arguing that the Hague Convention is now void with Hong Kong.  Respondent argues that recent events indicate that Hong Kong is indistinguishable from the People's Republic of China (PRC), and the United States government declared Hong Kong is no longer autonomous from the PRC.  See d/e 15.  Respondent contends that because PRC is not a signatory to the Hague Convention, Hong Kong is no longer a party to the Convention, and, therefore, Petitioner failed to state a claim and her Petition should be dismissed with prejudice.  However, Petitioner argues that Hong Kong is still a party to the Convention,

and the Court does not have jurisdiction to decide the sovereignty of Hong Kong as it is a nonjusticiable political question.  See d/e 21.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  Christensen v. Cty. Of Boone, Ill., 483 F.3d 454, 458 (7th Cir. 2007).  A complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014) (internal quotation omitted).  The court must draw all inferences in favor of the non-moving party.  In re marchFIRST Inc., 589 F.3d 901, 904 (7th Cir. 2009).

### III. ANALYSIS

Hong Kong has been a separate yet unified country as a "one country, two systems" policy with China since July 1, 1997, which was to continue until the year 2047.  See 22 U.S.C. § 5701.

In 1988, the United States ratified the Hague Convention and became a contracting state on July 1, 1988.  See Executive Order No. 12648, 53 Fed.Reg. 30637 (1988).  Also in 1988, the United States enacted the ICARA to implement the Hague Convention in the United States.  See 22 U.S.C. §§ 9001 *et seq.*  On September 1, 1997, Hong Kong became a signatory to the Hague Convention.  See U.S. Hague Convention Treaty partners, U.S. Department of State – Bureau of Consular Affairs,

https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html

(last visited October 23, 2020).

In 1992, Congress enacted the United States-Hong Kong Policy Act (USHKPA), which governs U.S. policy with Hong Kong.  22 U.S.C.A. § 5701 *et seq.*  Section 5721 provides:

> If in carrying out this subchapter, the President determines that Hong Kong is not legally competent to carry out its obligations under any such treaty or other

international agreement, or that the continuation of Hong
Kong's obligations or rights under any such treaty or
other international agreement is not appropriate under
the circumstances, such determination shall be reported
to the Congress in accordance with section 5731 of this
title.

22 U.S.C. § 5721.  On May 22, 2020, China approved new national

security legislation over Hong Kong.  See China's National Security

Law for Hong Kong: Issues for Congress, Congressional Research

Service, R46473 (August 3, 2020) (available at

https://crsreports.congress.gov/product/pdf/R/R46473).  The U.S

Congress was notified of this change.   See 2020 Hong Kong Policy

Act Report, U.S. Department of State, https://www.state.gov/2020-

hong-kong-policy-act-report/ (last visited October 23, 2020).

As stated in the Congressional Research Service Report (CSR

Report):

On June 30, 2020, China's National People's Congress
Standing Committee (NPCSC) passed a national security
law (NSL) for the Hong Kong Special Administrative
Region (HKSAR). Hong Kong's Chief Executive
promulgated it in Hong Kong later the same day. The law
is widely seen as undermining the HKSAR's once-high
degree of autonomy and eroding the rights promised to
Hong Kong in the 1984 Joint Declaration on the
Question of Hong Kong, an international treaty between
the People's Republic of China (China, or PRC) and the
United Kingdom covering the 50 years from 1997 to
2047.

See CRS Report R46473, p. 2.  Thereafter, President Trump and Secretary of State Pompeo have taken steps to combat China's actions.  Id. at p. 2-3.

On July 14, 2020, the United States passed the Hong Kong Autonomy Act (HKAA) codifying that the PRC was to ensure Hong Kong has the "high degree of autonomy."   Id. at p. 2; Public Law 116-149.   On the same day, President Trump issued an Executive Order, No. 13936, declaring a national emergency based on his determination that "the situation with respect to Hong Kong, including recent actions taken by the PRC to fundamentally undermine Hong Kong's autonomy, constitutes an unusual and extraordinary threat . . . to the national security, foreign policy, and economy of the United States."  See Exec. Order No. 13936, 85 Fed. Reg. 43413 (July 17, 2020).  The Executive Order states, "It shall be the policy of the United States to suspend or eliminate different and preferential treatment for Hong Kong to the extent permitted by law and in the national security, foreign policy, and economic interest of the United States."  Id.  The President found that the recent actions

of PRC "constitutes an unusual and extraordinary threat" and declared "a national emergency with respect to that threat."  Id.

Respondent argues that the Executive Order suspends differential treatment and eliminates the distinction between Hong Kong and China for purposes of the Hague Convention.  As such, according to Respondent, the United States no longer treats Hong Kong as a party to the Convention.  However, as Petitioner indicates, the Executive Order refers to specific federal statutes and treaties.  Neither the Convention nor the ICARA is cited in the Executive Order.  See Exec. Order No. 13936.  Petitioner argues there is no basis to conclude that the United States intended to abrogate or suspend the application of the Convention to Hong Kong.  Respondent argues that the list was not exhaustive.

Of note, the Court received a letter on October 15, 2020, from the United States Department of State stating that the Department is the U.S. Central Authority for the Hague Convention and that a case is before this Court "as the result of a request to the Central Authority from the Central Authority of Hong Kong for the return of the minor children under the Convention."  See d/e 22.  The Department detailed information about the Convention and

resources provided to the Court, if it so desires.  Id.  The Court finds that the U.S. Department of State is still following the Hague Convention with respect to Hong Kong as the Department sent this letter based on a request from the Central Authority of Hong Kong.

The Court gives the language of the Executive Order its plain and ordinary meaning as the language is clear and unambiguous. Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.  Where, as here, that examination yields a clear answer, judges must stop.") (citations omitted).  The Executive Order specifically states that Hong Kong is no longer sufficiently autonomous to justify differential treatment in relation to the People's Republic of China (PRC or China) **under the particular United States laws and provisions thereof set out in this order**."  Exec. Order No. 13936 (emphasis added).  Moreover, throughout the Executive Order, the President lists specific statutes and treaties that the Executive Order affects.  The Hague Convention and the ICARA are not mentioned.  Therefore, the Court finds that neither the United States Congress nor the President of

the United States has removed Hong Kong from the Hague Convention.

Additionally, Petitioner argues that this Court does not have jurisdiction to decide the sovereignty of Hong Kong as it is a nonjusticiable political question. See Jones v. United States, 137 U.S. 202, 212 (1890) ("Who is the sovereign, *de jure* or *de facto*, of a territory, is not a judicial, but a political, question, the determination of which by the legislative and executive departments of any government conclusively binds the judges, as well as all other officers, citizens, and subjects of that government."). Petitioner contends that deciding the issue of whether Hong Kong is without authority to be a party to the Convention would be a political question, over which the Court lacks subject matter jurisdiction.  Without a clear pronouncement from the President of the United States or the United States Congress that the United States does not view Hong Kong as a signatory to the Hague Convention, this Court is not in a position to issue a ruling on the sovereignty of Hong Kong.

## IV. CONCLUSION

For the reasons stated, Respondent's motion to dismiss (d/e

14) is DENIED.

**ENTERED: October 26, 2020.**

**FOR THE COURT:**

         _s/ Sue E. Myerscough_

         **SUE E. MYERSCOUGH**
         **UNITED STATES DISTRICT JUDGE**