E-FILED
Monday, 02 November, 2020  04:48:49 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **IN RE: THE MARRIAGE OF:** | ) | |
| | ) | |
| **CHUNG CHUI WAN,** | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| and | ) | **No. 3:20- cv – 03233 – SEM - TSH** |
| | ) | |
| **MICHEL DALE DEBOLT,** | ) | |
| | ) | |
| *Respondent*. | ) | |

**ANSWER TO**
**VERIFIED COMPLAINT AND PETITION FOR RETURN OF THE MINOR**
**CHILDREN IN ACCORDANCE WITH THE HAGUE CONVENTION AND MOTION**
**FOR EXPEDITED RETURN AND HEARING INSTANTER**

NOW COMES the Respondent, MICHEL DALE DEBOLT, by and through his attorneys,

BEERMANN LLP and FELDMAN WASSER, and makes this his answer to Petitioner's Verified

Complaint and Petition for Return of the Minor Children in Accordance with the Hague

Convention and Motion for Expedited Return and Hearing Instanter as follows:[1]

**INTRODUCTION**

1.     This action is brought by Chung Chui Wan (hereinafter "Petitioners or "Mother"),
a citizen of Hong Kong and the United Kingdom, in an effort to secure the return of her two
children, namely T.D., age 9, and A.D., age 8, from Illinois to Hong Kong, Both children were
born in Hong Kong; are citizens of Hong Kong and the United States; and they have resided
exclusively in Hong Kong for the entirety of their lives.

**ANSWER:**     **Admit that TD and AD were born in Hong Kong and are citizens of the United**

**Kingdom, the United States, and Hong Kong. Deny that they have resided**

---

[1] By Answering Petitioner's Petition, Respondent does not waive, but categorically preserves all arguments raised in
his Motion to Dismiss the same.

**exclusively in Hong Kong for the entirety of their lives.**

2.　　On or about July 18, 2020, Michel Debolt (hereinafter "Respondent" or "Father"), traveled with the minor children from Hong Kong to Shelbyville, Illinois to visit his relatives. Believing in the importance of extended family contact for the parties' minor children, Petitioner agreed to this trip believing Respondent and the children would return home to Hong Kong on August 17, 2020. This return date would provide the children with enough time to adjust to the time change, prepare for the start of school in Hong Kong, which was to begin September 1, 2020, and if necessary, quarantine for 14 days.

**ANSWER:　　Admit that Michel traveled with the children to Illinois with Wan's consent and, at the time of their departure from Hong Kong, Respondent and children intended to leave Illinois on August 17, 2020 to return to Hong Kong to prepare for school and, if necessary, quarantine for 14 days. Deny all remaining allegations.**

3.　　While Respondent and the children were on their trip to Illinois, Petitioner and Respondent discussed the details for the return trip home to Hong Kong, and Respondent confirmed that the return flight was scheduled for August 17, 2020. See WhatsApp communications attached hereto as Exh**ibit A.**

**ANSWER:　　Admit.**

4.　　On July 30, 2020 and after Respondent brought the children to the United States on a holiday visit, Respondent proposed to Petitioner his idea of staying in the United States with the children. Petitioner told to Respondent that she did not consent to his proposal. See WhatsApp communication from July 30, 2020 attached hereto **as Exhibit B.**

**ANSWER:　　Deny Petitioner's characterization of the parties' conversations and communications. Admit the contents of the partial WhatsApp conversation between the parties.**

5.　　On August 7, 2020, Petitioner again asked Respondent about his plans to return the children to Hong Kong on August 17, 2020. Respondent stated that he was planning on remaining in the United States with the children, Petitioner stated again the following day that he did not have her permission to retain the children in the United States beyond August 17, 2020. See August 8, 2020 WhatsApp communication attached hereto
**as Exhibit C.**

**ANSWER:　　Deny Petitioner's characterization of the parties' the parties' conversations**

and communications. **Admit the contents of the partial WhatsApp conversation between the parties.**

6.      On August 16, 2020, Petitioner advised Respondent that if he did not return to Hong Kong with the children as scheduled, she would initiate legal proceedings. The following day, Respondent assured her that he had booked flights and would return as agreed. See WhatsApp communications from August 16 and 17, 2020 attached hereto **as Exhibit D.**

**ANSWER:** **Deny Petitioner's characterization of the parties' conversations and communications. Deny that Respondent assured Petitioner that he and the children would return as Petitioner indicates. Admit the contents of the partial WhatsApp conversation between the parties.**

7.      In addition, Respondent provided screenshots of his and the children's confirmed return flights for August 19, 2020. See Exhibit D. Further, the children advised Petitioner that they had each had COVID-19 tests to meet Hong Kong government's inbound traveler requirement.

**ANSWER:** **Admit.**

8.      On August 19, 2020, instead of Respondent and the children returning home to Hong Kong on as planned, Petitioner received a copy of a summons and a Petition for Dissolution of Marriage that was filed by Respondent on August 12, 2020 in Shelbyville, Illinois.

**ANSWER:** **Admit that Respondent served Petitioner with a Petition for Dissolution of Marriage on or about August 19, 2020. Deny all remaining allegations.**

9.      On August 20, 2020, the children informed Petitioner that they were remaining in the United States and had been enrolled in and already began school at Stewardson-Strasburg Elementary School in Shelbyville, Illinois on August 19, 2020.

**ANSWER:** **Deny.**

### HAGUE CONVENTION AND ICARA

10.     This Complaint and Petition are filed pursuant to the Convention on the Civil Aspects of International Child Abduction[2] (hereinafter the "Hague Convention" or the "Convention") and the International Child Abduction Remedies Act[3] (hereinafter "ICARA"). Copies of the Hague Convention and ICARA are attached hereto as Exhibits E and F respectively.

---

[2] Oct. 25, 1980, T.I.A.S, No, 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10494 (1986).
[3] 22 U.S.C. $ 9001-9011 (2014)

**ANSWER:**     **Admit.**

11.    The Hague Convention has been applied between Hong Kong and the United States since September 1, 1997.

**ANSWER:**    **Admit that the Hague Convention applied between Hong Kong and the United States starting September 1, 1997. Deny that the Hague Convention currently applies between Hong Kong and the United States.**

12.    The objectives of the Hague Convention are as follows:

Article 1(a):    To secure the prompt return of children wrongfully removed to or retained in any Contracting State; and
Article 1(b):    To ensure that rights of custody and access under the law of one Contracting State are effectively respected in other Contracting States.

**ANSWER:**    **Admit that Petitioner accurately cites portions of the Hague Convention. Deny that the Hague Convention currently applies between Hong Kong and the United States.**

13.    The Hague Convention authorizes a federal district court to determine the merits of a claim for wrongful removal or retention of a child. It does not allow the district court to consider the merits of any underlying custody dispute.

**ANSWER:**    **Without conceding that the Hague Convention currently applies between Hong Kong and the United States, admit.**

### JURISDICTION AND VENUE

14.    This Court has jurisdiction over this cause pursuant to 22 U.S.C. S 9003(a), which confers jurisdiction to federal courts to hear cases brought under the Hague Convention, as well as 28 U.S.C. §1331, which conveys jurisdiction to federal courts to hear cases that present a question of federal law.

**ANSWER:**    **Without conceding that the Hague Convention currently applies between Hong Kong and the United States, admit.**

15.    Venue is proper under 22 U.S.C. §9003 and 28 U.S.C. §1391(b) because the minor children are currently residing with Michel and his family in Windsor, Shelby County, Illinois,

which is located in the Springfield Division of the Central District of Illinois,

**ANSWER:**   **Without conceding that the Hague Convention currently applies between Hong Kong and the United States, admit.**

### STATEMENT OF FACTS

16.    Petitioner and Respondent were lawfully married on May 24, 2008 in St. James, Barbados. See the parties' marriage certificate attached here**to as Exhibit G.**

**ANSWER:**   **Admit.**

17.    Respondent was born in Illinois and has citizenships in both the United States and the United Kingdom. Respondent received his undergraduate degree from the University of Illinois; MBA from the Wharton School of Business; as well as a JD from Columbia University. Respondent has worked in Moscow as well as in London and Hong Kong as a partner in a prominent law firm. Since 2015, however, Respondent has voluntarily remained unemployed and has worked on creating an App (Epic Gems).

**ANSWER:**   **Deny that Respondent has been voluntarily unemployed. Admit all remaining allegations.**

18.    Petitioner was born in Beijing, China and grew up in Hong Kong. She works for UBS in Hong Kong. She has Hong Kong and United Kingdom passports.

**ANSWER:**   **Admit.**

19.    In 2010, the parties moved together from London to Hong Kong. While in Hong Kong, they had two (2) children together, namely T.D., age 9, and A.D., age 8. Both children were born in Hong Kong and have resided exclusively in Hong Kong for the entirety of their lives.

**ANSWER:**   **Deny that they have resided exclusively in Hong Kong for the entirety of their lives. Admit all remaining allegations.**

20.    The parties resided together with the minor children at Flat C on 2/F, Greenmont Court (Block 8) in Discovery Bay, Hong Kong. See the parties' home ownership land registry attached hereto as **Exhibit H.** Discovery Bay is a residential district in Hong Kong known for its tranquility, safety, beaches and outdoor space. As such, it often attracts and has many international families with young children living there.

**ANSWER:**   **Deny that Discovery Bay—or any part of Hong Kong—is known for its tranquility or safety. Admit all remaining allegations.**

21.      The parties' son T.D. attended a local school called SKH Wei Lun Primary School in Hong Kong since 2016, and his sister, A.D, attended this same school since 2018. This school is located approximately 7 minutes away from the parties' home and in walking distance. Prior to their enrollment in SKH Wei Lun Primary School, A.D. attended Po Leung Cheung Poon Mei Yee Kindergarten from 2015 to 2018, and T.D. attended the Cumberland Presbyterian Church Green Pasture Kindergarten from 2013 to 2016. See the children's academic reports attached hereto as **Exhibit I.**

**ANSWER:      Admit.**

22. The children's pediatrician, Dr. Richard W. Chiu, is located in Hong Kong. Dr. Chui has treated the children in Hong Kong since their births. See the children's medical records attached here**to as Exhibit J.**

**ANSWER:      Deny that Dr. Chiu has been the children's only pediatrician since their births.**

**Admit all remaining allegations.**

23.      The children participated in extracurricular activities while living and growing up in Hong Kong. In the past, the children have participated in swimming, dance team, and rugby. In particular, the parties' daughter was quite accomplished on the local rugby in team called the Discovery Bay Pirates. See the rugby coach's email stating how the parties' daughter is one of his best players" attached hereto as **Exhibit K**.

**ANSWER:      Admit that the children were involved in extracurricular activities in Hong**

**Kong. Deny all remaining allegations.**

24.      As described in detail above, Respondent and the minor children were only meant to visit Illinois from July 18, 2020 through August 17, 2020. Respondent and the children had confirmed return tickets to Hong Kong for August 19, 2020; they had taken the necessary COVID-19 tests required by the Hong Kong government to return; and Respondent assured Petitioner that he would be returning with the children on August 19, 2020.

**ANSWER:      Admit that Respondent and the minor children were originally scheduled to**

**visit Illinois from July 18, 2020 through August 17, 2020. Admit that**

**Respondent and the children had confirmed return tickets to Hong Kong for**

**August 19, 2020; they had taken the necessary COVID-19 tests required by**

**the Hong Kong government to return. Deny that Respondent assured**

**Petitioner at the time Petitioner indicates that Respondent would be returning**

**with the children on August 19, 2020.**

25.     Until August 19, 2020 when Respondent wrongfully retained the minor children in Illinois, the children have never resided in the United States. They have only visited the United States on occasion when they would visit with Respondent's family.

**<u>ANSWER:</u>     Deny.**

26.     On August 20, 2020, Petitioner submitted her applications for return of the minor children pursuant to the Hague Convention to Hong Kong's Department of Justice. Currently, this application is under review, Copies of said applications are attached hereto as **Exhibit L.**

**<u>ANSWER:</u>     Respondent lacks knowledge or information sufficient to form a belief about**

**the truth of these allegations.**

27.     On August 28, 2020, Petitioner filed her own Petition for Dissolution of Marriage in Hong Kong. A copy of the Petition is attached hereto as **Exhibit M**.

**<u>ANSWER:</u>     Respondent lacks knowledge or information sufficient to form a belief about**

**the truth of these allegations.**

28.     As evidenced by the foregoing, the minor children and their custodial terms and parenting rights are subject to the jurisdiction of the courts of Hong Kong as that is their place of habitual residence. Under the UCCJEA, Hong Kong is the home state of the children and, as such, Illinois has no child-custody jurisdiction.

**<u>ANSWER:</u>     Deny.**

**WRONGFUL RETENTION OF THE CHILDREN BY RESPONDENT:
CLAIM FOR RELIEF UNDER THE HAGUE CONVENTION**

29.     As set forth in detail above, as of August 19, 2020, Respondent has wrongfully retained and continues to wrongfully retain the minor children in the State of Illinois, United States, in violation of Article 3 of the Hague Convention and despite Petitioner's efforts to have the children returned to Hong Kong.

**<u>ANSWER:</u>     Deny.**

30.     Petitioner never acquiesced or consented to any permanent retention or relocation of the children from Hong Kong to any place, including the United States, or their living permanently outside of Hong Kong and the custody of Petitioner.

**<u>ANSWER:</u>     Deny.**

31. Upon information and belief, Respondent planned to wrongfully retain the children in Illinois before they departed from Hong Kong on July 18, 2020. By way of explanation, Respondent's registered company (EpicGem, Inc.[4]) for the app he has been working on since 2015 (Epic Gem) filed a Notice of Cessation of Place of Business in Hong Kong on July 10, 2020, a mere 8 days prior to departing Hong Kong for Illinois with the children. See copy of Cessation of Place of Business in Hong Kong attached hereto as **Exhibit N**.

**ANSWER:  Deny.**

32. Respondent's retention of the minor children is wrongful within the meaning of Article 3 of the Hague Convention because:

    a.    It is in breach of the rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal and retention; and

    b.    At the time of removal or retention, those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

**ANSWER:  Deny.**

33. Petitioner has rights of custody over the children because she is their mother, and they resided with her and the Respondent until unlawfully retained in Illinois by the Respondent. Respondent's wrongful retention of the children in Illinois, under the guise of a short vacation for he and the children to visit with his family in Illinois, is in breach of Petitioner's custody rights.

**ANSWER:  Deny that the children are unlawfully retained in Illinois by the Respondent, or that said alleged wrongful retention is in breach of Petitioner's custody rights. Admit that Petitioner is the children's mother.**

34. On August 19, 2020, Petitioner would have otherwise been able to exercise her custody rights over the children in Hong Kong and within the meaning of Articles 3 and 5 of the Convention but for Respondent's wrongful retention of the children in Illinois.

**ANSWER:  Without conceding that the Hague Convention currently applies between Hong Kong and the United States, Respondent lacks knowledge or information sufficient to form a belief about what Petitioner would have**

---

[4] Respondent's company was initially registered in Hong Kong on March 27, 2018. He recently filed his annual return on June 26, 2020 whereby he continued to claim the parties' residence in Hong Kong as his address. See annual return attached hereto as **Exhibit O**.

**otherwise been able to do.**

35.    An Affidavit of Hong Kong law as it relates to matters regarding children and rights of custody in Hong Kong is attached hereto as **Exhibit P.**

**ANSWER:**    **Respondent lacks knowledge or information sufficient to form a belief about**

**the truth of these allegations, or those in the attached affidavit.**

36.    The children habitually reside in Hong Kong within the meaning of Article 3 of the Hague Convention.

**ANSWER:**    **Without conceding that the Hague Convention currently applies between**

**Hong Kong and the United States, admit.**

37.    Upon information and belief, the minor children are presently residing with Respondent and Respondent's family at 3203 East, 1450 North Road in Windsor, Illinois.

**ANSWER:**    **Admit.**

38.    The children are both under the age of sixteen (16) and as such, the Hague Convention applies to them.

**ANSWER:**    **Without conceding that the Hague Convention currently applies between**

**Hong Kong and the United States, admit that the children are under the age**

**of 16.**

39. This Petition is filed less than one (1) year from the time Respondent wrongfully retained the children in Illinois from Hong Kong.

**ANSWER:**    **Admit to the timing of Petitioner's Petition. Deny all remaining allegations.**

## PROVISIONAL REMEDIES
## 22 U.S.C. §9004 & HAGUE CONVENTION ARTICLE 16

40.    Petitioner requests that this Court issue an immediate order restraining Respondent from removing the children from the jurisdiction of this Court and directing any United States Marshall or other law enforcement officer to bring the children before this Court. Petitioner also asks this Court to schedule an expedited hearing on the merits of this Petition.

**ANSWER:**    **Admit that Petitioner requests certain relief as set forth in paragraph 40 of her**

Petition. Deny her entitlement to the same.

41.     Petitioner requests that this Court issue an immediate Order to confiscate any and all passports and other travel documentation of the minor children and Respondent during the pendency of these proceedings so that the children cannot be removed without court order until they are rightfully returned to the custody of their mother. The children have three (3) passports each  - United States, Hong Kong, and the United Kingdom.

**ANSWER:     Admit that Petitioner requests certain relief as set forth in paragraph 41 of her**

**Petition. Deny her entitlement to the same.**

42.     In an effort to ensure that telephone and video contact between the children and Petitioner continues without interruption, Petitioner seeks to implement immediate, daily telephone and video access with the children until these proceedings are resolved allowing the children to be rightfully returned to their mother's custody in Hong Kong.

**ANSWER:     Admit that Petitioner requests certain relief as set forth in paragraph 42 of her**

**Petition. Deny her entitlement to the same.**

43.     If Petitioner's employer allows her to work from the United States until these proceedings are concluded, then she should be granted equal parenting time while present in the United States as well as additional parenting time to compensate for lost time due to Respondent's wrongful retention and abduction of the children.

**ANSWER:     Deny.**

## ATTORNEY FEES AND COSTS
## 22 U.S.C. §9007

44.     Petitioner has incurred and will continue to incur costs as a result of the wrongful retention of the children by Respondent.

**ANSWER:     Deny that Respondent has wrongfully retained the children. Respondent lacks**

**knowledge or information sufficient to form a belief about the truth of the**

**remaining allegations.**

45.     Petitioner respectfully requests that this Court award her all costs and fees, including transportation costs, housing costs in the United States and the like as well as attorney fees, incurred as required by 22 U.S.C. §9007.

**ANSWER:     Deny.**

## NOTICE OF HEARING
### 22 U.S.C. §9003(c)

46.     Pursuant to 22 U.S.C. §9003(c), Respondent shall be given notice of these proceedings in accordance with the laws governing notice to interstate child custody proceedings,

**ANSWER:**     **Admit that Respondent received notice of these proceedings.**


**WHEREFORE, Respondent, MICHEL DALE DEBOLT, prays that this Honorable Court deny the relief sought by the Petitioner.**


**[this space intentionally left blank]**

## **AFFIRMATIVE DEFENSES**

Without conceding that the Hague Convention presently applies between the United States and Hong Kong, Respondent asserts the following affirmative defenses to Petitioner's Petition.

### **First Affirmative Defense**
### **Grave Risk of Harm / Intolerable Situation**

1. Article 13, paragraph (b) of the Hague Convention provides that this Court is not bound to order the return of the children if Respondent establishes that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."

2. As the United States Department of State has recently noted, there have been concerning recent developments in Hong Kong calling its safety into question, including:

> the arrest of opposition lawmakers, the editing of textbooks to remove references to civil disobedience and separation of powers in Hong Kong, and arrest warrants issued for statements made supporting democracy in Hong Kong. The Hong Kong Police Force arrested hundreds of peaceful protestors and deployed pepper-spray projectiles on September 6, 2020 as Hong Kong residents expressed opposition to the delay of Legislative Council elections. The Hong Kong Government has denied visas to those who could be considered critical of the administration. The Hong Kong Government uses arrests on spurious charges to limit international travel, and Chinese state-owned media have suggested that Hong Kong residents who meet with foreign diplomats could be subject to "collusion" charges under the National Security Law.[5]

3. Further, Hong Kong is currently under a "Level 3" travel warning from the state department due to its arbitrary enforcement of local laws:

> The PRC government arbitrarily enforces local laws, including by carrying out arbitrary and wrongful detentions and through the use of exit bans on U.S. citizens and citizens of other countries without due process of law. The PRC government uses arbitrary detention and exit bans:

---

[5] https://www.state.gov/identification-of-foreign-persons-involved-in-the-erosion-of-the-obligations-of-china-under-the-joint-declaration-or-the-basic-law/ (last accessed November 2, 2020).

- to compel individuals to participate in PRC government investigations,
- to pressure family members to return to the PRC from abroad,
- to influence PRC authorities to resolve civil disputes in favor of PRC citizens, and
- to gain bargaining leverage over foreign governments.

In most cases, U.S. citizens only become aware of an exit ban when they attempt to depart the PRC, and there is no reliable mechanism or legal process to find out how long the ban might continue or to contest it in a court of law.

U.S. citizens traveling or residing in the PRC or Hong Kong, may be detained without access to U.S. consular services or information about their alleged crime. U.S. citizens may be subjected to prolonged interrogations and extended detention without due process of law.

Security personnel may detain and/or deport U.S. citizens for sending private electronic messages critical of the PRC government.

The PRC government does not recognize dual nationality. U.S.-PRC citizens and U.S. citizens of Chinese heritage may be subject to additional scrutiny and harassment, and the PRC government may prevent the U.S. Embassy from providing consular services.[6]

4. In this case, ordering the children returned to Hong Kong would subject them to (i) a grave risk of physical and psychological harm and (ii) place them in an intolerable situation, for many reasons, including (without limitation):

   a. Rapidly evolving legal restrictions unilaterally imposed in Hong Kong by the Communist leadership of the People's Republic of China, in some cases without notice and consultation, have resulted in diminishing freedoms, continually expanding criminalization of statements and activities and, as Petitioner herself has described, the arrest of thousands of Hong Kong citizens, including students and

---

[6]   https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/hong-kong-travel-advisory.html   (last accessed November 2, 2020).

young children;

    b.  Petitioner's statements and actions have exposed (and continue to expose) herself, the children and Respondent to the risk of legal prosecution and political attack in Hong Kong;

    c.  Isolation of the children in the small island community of Discovery Bay where they will be forced to attend a school where students have sung for Hong Kong's independence and chanted protest slogans, activities which would subject the children to discipline and legal prosecution under recently imposed legislation;

    d.  Being removed from the care of the Respondent, who, as a result of Petitioner's actions, cannot safely travel to Hong Kong without risk of political prosecution, and placed under the primary care of non-relative household staff;

    e.  Regularly recurring mistreatment of the children by Petitioner, including (without limitation) excessive physical disciplining, intimidation, emotional abuse and absences as Petitioner regularly prioritizes personal career and social interests to the detriment of the children, which behavior Respondent has moderated in the past through his care of the children in Hong Kong (but which is not possible now, due to disclosures Petitioner has made to the authorities and resulting risks to Respondent if he should return to Hong Kong).

5.  Petitioner has not only acknowledged the grave risk to which the children would be exposed to if returned to Hong Kong, but has actively taken steps to increase that risk should they be ordered to return to Hong Kong. For example, and without limitation, Petitioner has:

    a.  Accused Respondent of harboring negative views of China's communist leadership

both in her August 20, 2020 Hague Petition and again in her August 28, 2020 divorce petition, each submitted to the Hong Kong authorities. These statements which Petitioner has needlessly placed into official records (and the risk of further such selective disclosures by Petitioner in the future), have all but ensured that Respondent can no longer safely travel to Hong Kong to help the children navigate the growing risks they would face there, without Respondent being subject to the risk of harassment, detention, or political prosecution;

b. Made inflammatory statements via the internet, disclosable to and therefore reviewable by Chinese and Hong Kong authorities, and otherwise engaged in conduct which could subject her, Respondent, and their children to the same type of arbitrary enforcement of local laws the State Department recently warned against.

c. Failed, on multiple occasions, to comply with COVID-19 related legal requirements applicable in Hong Kong, even after acknowledging being subject to such requirements.

6. Following their mother's lead, the children have begun to express views similar to those of the Petitioner. Under the national security legislation now in force in Hong Kong, the children's statements would subject them to criminal punishment and imprisonment in Hong Kong, without regard to their age or where the statements were made.

7. While Respondent has taught the children the difference between the United States, with robust speech protections under First Amendment, and Hong Kong, with no such protections, as well as the dangers of "unfavorable" speech in Hong Kong, Petitioner's proposal to take the children back to Hong Kong to be placed under the primary care of

non-relative household staff without Respondent's daily presence in their lives dramatically increases the odds that the children will misspeak in the future (or simply repeat statements they have made in the past while under the protections accorded by the United States) and suffer grave consequences as a result.

8. Petitioner's provocative actions and statements, coupled with the fact that the parties' children are dual nationals, have effectively painted a target on their backs should they be forced to return to Hong Kong, where they will be subject to the risk of arbitrary punishment (including detention, arrest, or worse) under legislation now in force there.

## Second Affirmative Defense
### The Children Wish to Remain in Illinois

9. Article 13 of the Hague Convention further provides that this Court "may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views."

10. Each of the children wishes to remain with Respondent in the United States and has objected to being returned to Hong Kong.

11. The parties' child (TD) is 9 years of age and possess a sufficient degree of maturity such that it is appropriate to take his views into account.

## Third Affirmative Defense
### Fundamental Principles Relating to the Protection of Human Rights and Fundamental Freedoms Do Not Permit Return of the Children

12. Article 20 of the Hague Convention provides that this Court may refuse to order the return of children "if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms."

13. As set forth above, and as confirmed by our federal government, the protection of human

rights and fundamental freedoms are things of the past in Hong Kong.

14. At the same time, the children self-identify as Americans and greatly value the fundamental freedoms the United States stands for and provides them while they are present here.

15. Instead, the parties' children will be subject to increased state scrutiny and the risk of arbitrary detention or arrest should they be returned to Hong Kong.

16. Furthermore, Respondent believes that statements already made by the children regarding China and Hong Kong, including those made while enjoying the freedom accorded to them as citizens in the United States, subject the children to prosecutorial discretion and the risk of punishment should the children be forced to return to Hong Kong.

17. Furthermore, insofar as the United States has determined that the human rights situation in Hong Kong had eroded to the point where it will no longer extradite adult fugitive offenders and prisoners to Hong Kong, it would be unconscionable to do the same to minor children.[7]

Respectfully Submitted,

**MICHEL DALE DEBOLT**

By:/s/ *Matthew D. Elster*
One of His Attorneys

Shana Vitek                                     Howard W. Feldman
Matthew D. Elster                          John S.M. Morse
**BEERMANN LLP**                         **FELDMAN WASSER**
161 North Clark Street, Suite 3000    1307 South 7th Street
Chicago, IL   60601                          Springfield, IL 62703
(312) 621-9700                                (217) 544-3403
(312) 621-0909 – Fax                       (217) 544-1593 – Fax
slvitek@beermannlaw.com              hfeldman@feldmanwasser.com
mdelster@beermannlaw.com          jmorse@feldmanwasser.com

---

[7] Exec. Order No. 13936, 85 Fed. Reg. 43413 (July 17, 2020) (available at https://www.federalregister.gov/documents/2020/07/17/2020-15646/the-presidents-executive-order-on-hong-kong-normalization).

## **<u>VERIFICATION</u>**

I, MICHEL DALE DEBOLT, declare under penalty of perjury under the laws of the United States

of America that the statements contained in the foregoing are true and correct.


/s/ *Michel Dale Debolt*

MICHEL DALE DEBOLT

Executed on November 2, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of November, 2020, a copy of the attached document was filed via the court's CM/ECF system, which will send electronic notice to all counsel of record who have appeared in this case.

/s/ *Matthew D. Elster*