E-FILED
Friday, 12 March, 2021  11:11:18 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHUNG CHUI WAN, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| **and** | ) | No. 3:20- cv – 03233 – SEM - TSH |
| | ) | **Judge Sue E. Myerscough** |
| MICHEL DALE DEBOLT, | ) | |
| | ) | |
| *Respondent.* | ) | |

## MOTION IN LIMINE TO BAR PETITIONER'S REBUTTAL EXPERT
## DR. ROBERT SHAPIRO

NOW COMES the Respondent, MICHEL DALE DEBOLT ("**Michel**"), by and through his attorneys, BEERMANN LLP and FELDMAN WASSER, and moves for an order barring the Petitioner, CHUNG CHUI WAN's ("**Wan**") from calling her Rebuttal Expert, Dr. Robert Shapiro as a witness or tendering his report at trial. In support of this motion, Michel states as follows:

1.      Wan filed her Hague Petition on September 8, 2020. Trial in this matter is set to commence on Mach 23, 2021 before Judge Sue E. Myerscough.

2.      On December 8, 2020, Petitioner disclosed Dr. Robert Shapiro, a psychologist, as an expert witness planning to testify on her behalf.

3.      Although expert reports were initially due on January 6, 2021, and were later extended to January 27, 2021, Dr. Shapiro did not produce a report at either of these times.

4.      Dr. Alan M. Jaffe ("**Dr. Jaffe**"), the expert witness retained by Michel in this matter, produced an expert witness report on January 27, 2021. Dr. Jaffe's report is incorporated by reference as **Exhibit A.**

1

5. Counsel for Wan advised Michel's counsel prior to the report deadline that they had decided Dr. Shapiro would only be utilized as a rebuttal expert.

6. Thereafter, Dr. Shapiro tendered his "Rebuttal Report," on February 24, 2021. The "Rebuttal Report" is dated February 19, 2021. Dr. Shapiro's report is incorporated by reference as **Exhibit B**.

7. Michel's counsel took the deposition of Dr. Shapiro on March 3, 2021. At his deposition, Dr. Shapiro testified that he had never prepared a "Rebuttal Report" in any prior case where he had been hired as an expert. As will be made clear, Dr. Shapiro misunderstood his role in this matter.

8. F. R. Civ. P. 26(a)(2) provides for the disclosure of expert testimony "*intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)*." (Emphasis added.) F. R. Civ. P. 26(a)(2). The meaning of "the same subject matter" is limited: "[i]f the phrase 'same subject matter' is read broadly to encompass any possible topic that relates to the subject matter at issue, it will blur the distinction between 'affirmative expert' and 'rebuttal expert.'" *Vu v. McNeil-PPC, Inc.*, No. CV091656, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010).

9. Rebuttal evidence is properly admissible when it will "explain, repel, counteract or disprove the evidence of the adverse party *** [and is not] an opportunity for the correction of any oversights in the plaintiff's case in chief." (Internal quotation marks omitted.) *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004).

10. Experts are not permitted to introduce new issues in rebuttal reports, as this "would create a system where preliminary reports could be followed by supplemental reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could

'supplement' existing reports and modify opinions previously given." *Beller ex. rel. Beller v. U.S.*, 221 F.R.D. 689, 695 (D.N.M. 2003).

11.     Instead, "[a] party presents its arguments as to the issues for which it has the burden of proof in its initial expert report. And in its rebuttal expert report, it presents expert opinions refuting the arguments made by the opposing party in its initial expert report." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03 C 7713, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005). "The supplemental or 'rebuttal' experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts. *** A party who forgoes designating experts on the initial disclosure date will thus find itself in a purely reactive mode, greatly restricted in its ability to offer expert testimony." *Int'l Business Machines Corp. v. Fasco Industries, Inc.*, No. C-93-20326 RPA, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995).

12.     The February 19, 2021 report prepared by Dr. Shapiro is not a proper rebuttal report in any way whatsoever. Rather, Dr. Shapiro's report is clearly, and admittedly, his own independent evaluation and in fact an affirmative expert report, which he merely titled "Rebuttal Report", submitted after the deadline for such affirmative expert reports, thus materially prejudicing Michel by depriving him of time and opportunity to engage his own rebuttal expert to analyze and rebut the contents thereof.

13.     For example, on page three of Dr. Shapiro's report, he states that "*Wan was informed of the impartial nature of the evaluation process during her initial interview*." As a rebuttal expert hired specifically to contradict Dr. Jaffe's report, the "evaluation," cannot be considered impartial. Further, it was not proper for Dr. Shapiro as a rebuttal expert to conduct his own evaluation of the children and Wan (whom Michel's expert has never had the opportunity to observe or interview, and so whose views and interactions with the children could not be within

the scope of any rebuttal report properly prepared by Dr Shapiro) in the first place.

14.     He further states on page three, "*This evaluation report is a summary of the information provided during interviews and in reviewing the documentation*." The "summary of interviews," which comprise the vast majority of the "Rebuttal Report," all are improperly included as new information which was not available to Dr. Jaffe nor for Respondent to rebut (as would have been allowed under Federal Rule 26(a)(2) had Dr. Shapiro tendered his report as an expert witness within the applicable deadlines).

15.     Further supporting Michel's argument, Dr. Shapiro met with both children and Wan on December 31, 2020. He had another Zoom interview with Wan on January 16, 2021. All of these meetings occurred well before the production of Dr. Jaffe's report on January 27, 2021. At the time of these interviews, Dr. Shapiro would have no way of even knowing what opinions he was tasked to rebut.

16.     Courts routinely strike rebuttal reports that include new opinions and new bases and reasons for an expert's opinions. See Vu, 2010 WL 2179882, at *3-4 (striking rebuttal disclosures under Rule 37 as outside the scope of the initial report because plaintiff did not have the opportunity to address new arguments); Baldwin Graphic Sys., Inc., 2005 WL 1300763, at *2 (striking new theories contained in rebuttal reports and finding that the late disclosure prejudiced plaintiff because "discovery has now closed and defendant's belated disclosure comes when depositions are soon to commence").

17.     On pages three to six, Dr Shapiro extensively describes his observations of (and interactions with) T.D. and A.D. However, all of those observations and interactions occurred prior to the issuance of Dr Jaffe's report on January 27, 2021, so were clearly intended as an expert witness evaluation (which Michel has been deprived the opportunity to rebut).

18.     On page seven, Dr. Shapiro mentions Dr. Jaffe's report and actually agrees with the psychological expert opinion of by Dr. Jaffe regarding the effects of losing a parent, especially the primary caretaker. However, Dr Shapiro then proceeds to attack Dr Jaffe's opinion by referencing information Dr Jaffe has no access to (and Michel has not been able to rebut), explicitly noting "*However, Dr. Jaffe only had Michel's statements about being the primary caretaker. This evaluator has had the advantage of hearing from both parents: talking directly with Wan and getting Michel's perspective through Dr. Jaffe.*"

19.     On pages seven through twelve, Dr. Shapiro writes extensively about his observations of (and interactions with) Wan.  Again, Dr. Jaffe had no access to such observations or interactions and Michel has been deprived of the opportunity to rebut the conclusions Dr. Shapiro attempts to reach as an expert witness masquerading as a rebuttal expert.

20.     On page thirteen, Dr. Shapiro has a section entitled, "Conclusions and Opinion." He starts this section by stating: "*Procedurally, there were some significant differences in this evaluation from the evaluation conducted by Dr. Jaffe.*" As above, Dr. Shapiro is a rebuttal expert, and therefore it is improper for him to conduct his own evaluation, interjecting new theories and opinions on topics not addressed in Dr. Jaffe's report.

21.     The remainder of Dr Shapiro's report from pages thirteen to eighteen is littered with references by Dr Shapiro to his person interactions and observations with TD, AD and Wan, which clearly form the basis of his opinion, though none were available to Dr Jaffe.

22.     For example, on page fourteen, Dr Shapiro writes "In this rebuttal evaluation [T.D.] was asked what he likes to drink, what his dad likes to drink and what his mom likes to drink." However, again, all of Dr Shapiro's interactions with (and evaluations of) [T.D.] occurred prior to the issuance of Dr Jaffe's report on January 27, 2021, so were clearly intended as an expert witness

evaluation.

23.     On the same page, Dr. Shapiro discusses Wan's alcohol use, noting "Wan actually seemed quite candid and forthright in discussing her alcohol use. She said that she only drinks socially with friends. She said that she has on occasion been intoxicated and she also admitted having had too much to drink prior to the banana incident."  Dr. Shapiro is again describing his personal observations and interactions with Wan, none of which Dr Jaffe had access to and Michel has had no opportunity to rebut.

24.     Additionally, nowhere in Dr. Shapiro's Rebuttal Report, does Dr. Shapiro even set forth any expert psychological opinions refuting the psychological expert opinions of Dr. Jaffe.

25.     On Page seventeen, Dr. Shapiro states, "*Based on this investigation it is the opinion of the evaluator that Tyler and Abby should be returned to Hong Kong (their habitual residence) to reside with their mother*." There are several issues with this "opinion." First, his opinion is based on his own investigation, not Dr. Jaffe's report as it should have been. Second, the opinion is that the children should reside with their mother, which is a determination for the Court ultimately determining custody, not this case.

26.     Exclusion of expert opinions that are not properly disclosed in accordance with Rule 26(a) is "automatic and mandatory." See *Baldwin Graphics Sys., Inc.*, 2005 WL 1300763, at *1.

27.     Allowing Dr. Shapiro's "Rebuttal Report" to be introduced at trial will greatly prejudice the Respondent, who does not have the opportunity to rebut the new theories and independent evaluation conducted by Dr. Shapiro in this matter.

28.     Michel is requesting the Court allow him to file Exhibit A, Dr. Jaffe's report and Exhibit B, Dr. Shapiro's report under seal.

WHEREFORE, Respondent, Michael Dale Debolt, respectfully requests this Court bar the

testimony of Dr. Robert Shapiro and his Rebuttal Report; to allow Exhibits A and B to be filed

under seal and for an order requiring Wan to pay Michel's reasonable expenses in accordance with

Federal Rule of Civil Procedure 37(a)(5).

Respectfully submitted,

**BEERMANN LLP**

Attorneys for Respondent

/s/ *Shana L. Vitek*

Shana L. Vitek ARDC No. 6279978
**BEERMANN LLP**
*Attorneys for Respondent*
161 North Clark Street, Suite 3000
Chicago, Illinois 60601
Tel:  (312) 621-9700
Fax:  (312) 621-0909
Email:  slvitekr@beermannlaw.com,

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of March, 2021, a copy of the attached document was filed via the court's CM/ECF system, which will send electronic notice to all counsel of record who have appeared in this case.

/s/ *Shana L. Vitek*_____