# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS – SPRINGFIELD DIVISION

| | |
|---|---|
| CHUNG CHUI WAN, ) | |
|     Petitioner, ) | |
| ) | Case No.: 3:20-cv-03233 |
| v. ) | Judge Sue E. Myerscough |
| ) | |
| MICHEL DALE DEBOLT, ) | |
|     Respondent. ) | |

## PETITIONER'S MOTIONS *IN LIMINE*

57117677;1

**PETITIONER'S MOTION *IN LIMINE* #1:**
**TO EXCLUDE CERTAIN OPINION TESTIMONY OF DR. ALAN JAFFE**

Pursuant to Rule 26(a)(2) and Rule 37(c), Petitioner Chung Chui WAN moves this Court to bar all opinions of Dr. Alan Jaffe relating to the "Political Situation in Hong Kong" and "Culture of Silence" and in support thereof, WAN states as follows:

### INTRODUCTION AND STATEMENT OF FACTS

On November 18, 2020, a Scheduling Order (Dkt. 33) was entered by this Court and Paragraph 4 of the Order provides that "Parties are to identify testifying experts by December 7, 2020, provide Rule 26 expert reports by January 6, 2020, depositions by February 12, 2021. Rebuttal expert reports due January 27, 2021." On December 31, 2021, the Respondent, MICHEL DALE DEBOLT ("DEBOLT") filed a Motion to Amend Scheduling Order. On January 13, 2021, the Court amended the Scheduling Order as follows: "the date to provide expert reports is extended to January 27, 2021; the date to provide rebuttal reports is extended to February 10, 2021; the deadline to complete expert depositions is extended to February 24, 2021; and the date to file dispositive motions is extended to March 1, 2021." (Dkt. 60).

On January 27, 2021, counsel for DEBOLT tendered the report of Dr. Alan Jaffe dated January 27, 2021. Exhibit A. Dr. Alan Jaffe is a licensed clinical psychologist and approximately 75% of his practice is dedicated to completing forensic psychological evaluations. Dr. Alan Jaffe is not designated by DEBOLT as an expert in matters relating to Hong Kong, the political climate in Hong Kong or Hong Kong laws. Dr. Alan Jaffe readily admitted during his deposition that he is not an expert on Hong Kong, the political climate in Hong Kong or the relevant laws in Hong Kong.[1] Despite Dr. Alan Jaffe's statements that he is not an expert on Hong Kong, his report

---

[1] During Dr. Jaffe's deposition (exhibit B) on February 25, 2021, Dr. Jaffe stated:

purports to set forth opinions regarding the children's safety in Hong Kong and potential legal ramifications for the children if they return to Hong Kong.  Specifically, Dr. Jaffe's Report, offers an opinion in three separate areas on the "Political Situation in Hong Kong,"[2] "Effects of Losing a Parent" and "Culture of Silence."[3]  Despite Dr. Alan Jaffe acknowledging throughout his

---

"Q:  Aside from the information that has been provided to you by Michel for this evaluation, do you have any independent knowledge of the situation in Hong Kong?
A: Only what I see on CNN International and some readings from the state department.  Beyond that, I would not consider myself to be particularly, you know, knowledgeable beyond – beyond that." Dep. at 60:14-22.

"A: It's a very scary situation there.  And that's based on the very limited knowledge that I have." Dep. at 68: 13-15.

"Q:  What are you relying upon in making these statements?
A:  My knowledge of the political situation is based on my exposure to CNN International News, reports from the state department." Dep. at 114: 24-25 and 115:1-3.

"Q: And your understanding regarding the risk of Michel returning to Hong Kong are based on documents that Michel produced, correct?
A:  Yes.  Based on that, and based on my knowledge of the news for – you know, whatever that's worth. I am not an expert in State Department affairs, let me be the first to say that. Okay.  And you've got me there.  I cannot discuss the political situation with any authority whatsoever, nor do I even pretend to.  I mean, I'm up against a wall on that one as an expert.  But these children need both of these parents." Dep. at 137:14-25 and 138:1-2.

"A:  Now, again, I am not a member of the State Department.  So I am limited.  But clearly there is a risk by what I – simply by what I watch on CNN International, there is a risk."  Dep. at 140:10-22.

"A:  No.  That's – the information about the risks, as I had indicated is based upon my knowledge as someone who is – is attendant to the international news.  *I am not an expert.  I do not hold myself out as an expert*." Dep. at 142:3-10.

"Q:  Are you aware of the process that's in place to investigate claims that are made to the hotline?
A:  I am not aware of the process.  My knowledge of the political - -  of the specific process is limited, and practically nonexistent." Dep. at 147:10-15.

[2] Dr. Alan Jaffe Report, page 25 "The continuously fluctuating political unrest in Hong Kong makes it impossible to guarantee the safety of Michel's children should they return to Hong Kong. . . .  Under the National Security Law, they now could be detained and punished for making similar statements. . . . Thus, despite their dual citizenship, according to the U.S. Department of State information, Michel's children may be prevented from receiving consular services from the U.S. Embassy and may be subject to additional scrutiny and harassment, as the PRS government does not recognize dual nationality."

[3] Dr. Alan Jaffe Report, page 25-26, 31 "According to Michel, the children have openly expressed statements against the Chinese government while in Hong Kong outside of their home in the past.  However, with the implementation of the national security law and the establishment of the hotline, doing so now could potentially subject them to detention and punishment. . . . Thus, a once acceptable and practiced behavior could put the children at risk for harm now, should they express any pro-democracy or anti-communist views to friends or others in their community in Hong Kong. . . . In May 2020, one-hundred children were arrested for protesting; thus, it is possible that impulse-seeking or

deposition that his knowledge of Hong Kong is limited and that he is not an expert on Hong Kong, Dr. Alan Jaffe provided expert opinion that "returning them to China/Hong Kong would create a clear and undeniable endangerment of a personal safety potential as well as psychological and emotional devastation" based upon his limited knowledge of Hong Kong.

Dr. Jaffe should be precluded from offering opinions on behalf of Michel outside of his area of expertise at Trial and barred from offering opinions that were formed based upon facts and data that Dr. Jaffe has not disclosed.

## ARGUMENT

WAN filed a Verified Complaint and Petition for Return of the Minor Children in Accordance with the Hague Convention and Motion for Expedited Return and Hearing Instanter requesting the immediate return of the parties' children, namely T.D., age 10, and A.D., age 8, to their habitual residence of Hong Kong. DEBOLT sets forth in his Answer to the Complaint as a defense to WAN'S request for the immediate return of the children to Hong Kong that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation. Dkt. 27. DEBOLT'S claims that the children's return to Hong Kong would expose the children to a grave risk primarily rely upon the legal and political climate in Hong Kong. DEBOLT also alleges that mistreatment of the children by WAN through "excessive physical disciplining, emotional abuse and prioritizing her personal career and social interests to the detriment of the children" constitute a grave risk to the children if they return to Hong Kong. Dkt. 27. DEBOLT disclosed that Dr. Jaffe would testify in his capacity as a licensed clinical psychologist, presumably to aid this Court in the psychological

---

prosocial behaviors could place Michel's children in a similar environment in which they put themselves at risk, despite being encouraged to remain silent."

impact upon the children for their return to Hong Kong and DEBOLT'S claims that WAN'S mistreatment of the children constitute a grave risk. Dr. Alan Jaffe was designated as DEBOLT's psychological expert, and not an expert on Hong Kong, the political climate in Hong Kong or the alleged risk of harm to the children in the event of their return.

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony in the federal courts, setting the following parameters:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

While the Court has latitude to admit expert testimony under Rule 702, expert testimony is not admissible if it does not meet two related requirements: (1) it must be based on the special knowledge of the expert; and (2) it must be helpful to the finder of the fact. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-91 (1993). The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of evidence that the testimony satisfies the requirements for admissibility. *Id.* At 592. "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *United States vs. Benson*, 941 F.2d 598, 604 (7th Cir. 1992).

Dr. Jaffe's opinions and testimony on the "Political Situation in Hong Kong," the "Culture of Silence" and the alleged grave risk of harm to the children if they return to Hong Kong due to

57117677;1

the political climate should be excluded because Dr. Jaffe is not qualified to testify as an expert on these subjects and his opinions will not be helpful to this Court. Further, Dr. Jaffe's knowledge of Hong Kong based upon his review as a layman of CNN International is not specialized knowledge of the expert and thus, his knowledge or opinion as to the risks in Hong Kong will not aid this Court.

In addition to Dr. Jaffe's acknowledgment that he has limited knowledge on Hong Kong and is not an expert on Hong Kong, Dr. Jaffe has not produced the facts and data that he relied upon in forming his opinion, as required by Federal Rule of Civil Procedure 26(a)(2). Federal Rule of Civil Procedure 26(a)(2) provides as follows:

> (2) Disclosure of Expert Testimony.
>     (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>     (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report-prepared and signed by the witness-if the witness is one retained or specially employed to provide expert testimony in the case or who whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>         (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>         (ii) *the facts or data considered by the witness in forming them;*
>         (iii) any exhibits that will be used to summarize or support them.

Further, Federal Rule of Civil Procedure 37(c) provides that if a "party fails to provide information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial*, unless the failure was substantially justified or is harmless."

Throughout Dr. Jaffe's Report, he references authors that he relied upon in forming his opinions, but did not provide any other identifying information for the sources relied upon.[4] Although page 4 of Dr. Jaffe's Report lists the documents reviewed for his Report, Dr. Jaffe has not provided any information, aside from the author's name with a date, for this information that he relied upon forming his opinion. Further, Dr. Jaffe stated at his deposition that he relied on several articles on Hong Kong in formulating his opinions regarding the risk to the children if they return to Hong Kong.[5] Without waiving objection to the untimeliness of the disclosure of all facts

---

[4] Specifically, Dr. Jaffe's report references Waddoups et al., 2019 (pg 26); Krueger 1983 (pg 27); Coghill et al. 2009 (pg 27); Briggs-Gowan et al., 2019 (pg 27); and Ward et al. 2015 (pg 29).

[5] During Dr. Jaffe's deposition on February 25, 2021, Dr. Jaffe stated:
> Q: Moving to the political situation in Hong Kong portion of your report. On page 25 you state, that authorities can curtail protests and freedom of speech using the law using as a catch-all offense in politically motivated prosecutions with potentially heavy penalties, including a maximum sentence of life in prison. Do you see that statement, third - - or second paragraph - - second sentence of the second paragraph?
> A: Yes.
> Q: What information did you rely upon for this statement?
> A: *You know, there were a couple of articles I relied on that I can provide you, I do not have them.*
> Q: Are those in addition to what you outlined on page 4 of your report?
> A: I believe so. I believe so.
> Q: And were these articles that you obtained independently or were they from Michel?
> A: *Independently. Can I look to see if I - - excuse me for a moment. Let me see if I can find them. . . . You know, I can't locate them, but I'm sure that I can provide them to you within 24 hours.*
> Q: . . . Is there any other information that you relied upon that has not been disclosed?
> A: *I don't believe so. But again I will - - I will absolutely provide them to you.*
> Q: A little bit further down in that paragraph you state, the law allows investigating authorities to search properties, restrict or prohibit travel, freeze or confiscate assets, censor online content, and engage in covert surveillance, including intercepting communications. What information did you rely upon in making that conclusion?
> A: *Again, there were a couple of articles that I cannot - - cannot recall the titles of at this point. I'm happy to provide those to you.*
> Q: *These articles were not disclosed in your production; is that correct?*
> A: *I guess they were an oversight.*
> Q: And you're aware that under the Federal Rules of Civil Procedure that you were to tender all documents that you relied upon in preparing your report at the time that you tendered your report, correct?
> A: Correct.
> Q: And you did not do this?
> A: Uh, apparently. *Much of what I relied upon was, as I had indicated - - anyway, no, I - - I - - that was - - I - - I don't know why these were not listed, but I will provide those to you.* Dep. 94:17-25, 95:1-20, 96:1-23
>
> Q: What did you rely upon in concluding about the use of violence that's taking place in Hong Kong?
> A: *I relied upon the articles.*
> Q: *Are these the articles that have not been disclosed?*
> A: *Correct.* Dep. 97:12-18
>
> Q: What information did you rely upon when you included this statement in your report?

and data relied upon by Dr. Jaffe in formulating the opinions contained in his report, counsel for WAN requested that Dr. Jaffe provide the articles relied upon and Dr. Jaffe indicated that he could provide the information within 24 hours of his deposition on February 25, 2021; however, as of the filing date of this Motion (over two weeks later) the articles and citations have not been provided.

Due to the failure of Dr. Jaffe to provide the facts and data relied upon by him in forming his opinions, DEBOLT should be barred from presenting the identified expert opinions of Dr. Jaffe because Dr. Jaffe's Expert Report fails to comply with Rule 26(a). Dr. Jaffe's failure to provide the facts and data relied upon in forming his opinions contained in his Expert Report severely harms and prejudices WAN, as she is unable to review, analyze and determining the credibility of facts and data relied upon by Dr. Jaffe in forming the opinions contained in his report.

## CONCLUSION

Dr Jaffe not qualified to offer the opinions on the risk of harm to the children if they return to Hong Kong due to the political climate and alleged legal consequences of certain acts in Hong Kong, as he admittedly possesses no specialized knowledge or expertise in this area, his opinions lack any reasonable foundation and are not helpful to this Court in resolving the issues

---

A: *I relied on the articles that I will produce for you.*
Q: *These articles were not previously disclosed, correct?*
A: *Correct.* Dep. 99:1-3.

Q: What did you rely upon in including in your report that nearly 100 children were arrested in May of 2020?
A: *I relied on an article.*
Q: *And is that an article that has not been disclosed by you?*
A: *Correct.* Dep. 102:11-17

Q: And you reference in your report that despite the fact that they have dual citizenship, that the kids could be prevented from receiving services from the U.S. Embassy; do you see that portion of your report?
A: Yes.
    *    *    *
Q: What did you rely upon in including this statement in your report?
A: *I relied on the articles that I will provide to you.* Dep. 103:8-20.

in the case. Dr. Jaffe should not be permitted to offer opinions relating to the risk of harm to the children if they return to Hong Kong due to the political climate and legal consequences of certain actions. Further, the opinions of Dr. Jaffe should be barred because he has failed to comply with Rule 26 that requires him to disclose all facts and data considered by him in formulating his opinions in this case. For the reasons stated above, the WAN respectfully requests that this Court enter an Order excluding and/or barring Dr. Jaffe's testimony and opinions relating to the risk of harm of the children return to Hong Kong due to the political climate and legal consequences of certain actions in Hong Kong.

57117677;1

**PETITIONER'S MOTION *IN LIMINE* #3:**
**TO PRECLUDE NON-DISCLOSED OPINION BY PHIL C.W. CHAN**

WAN moves *in limine* to preclude reliance on materials, facts, and data not addressed in a report under Fed. R. 26 by their expert Phil C.W. Chan.

Dr. Chan has testified that he has "no intention of adding to or deviating from the report the [he submitted]." Deposition of P. Chan, 15:6-10, Exhibit C. Despite Mr. Chan's firm assurances, counsel for DEBOLT has indicated in correspondence that they may. Following submission of the report, DEBOLT's counsel has produced thousands of pages of additional documents. Counsel argued that "As Dr. Chan continues to follow events in Hong Kong and alerts us, he will advise us and we will provide you the materials he directs us to. Everything we have sent you thus far is within the scope of his previsouly [sic] disclosed opinions. You can inquire at his deposition." Feb. 16, 2021 Email from H. London to T. Sendek, exhibit D. Counsel for WAN objected. *Id*.

Dr. Chan should not be permitted to provide any opinions that were not contained in the four corners of his reports required by Federal Rule of Civil Procedure 26(a)(2)(B), and an untimely document dump cannot take the place of a proper report.

Federal Rule of Civil Procedure 26(a)(2)(B) is mandatory in its language and import. It expressly requires: "The [expert] report **must** contain: (i) a complete statement of **all** opinions the witness will express and the basis and reasons for them. . ." (emphasis added). Moreover, "[i]f a party fails to provide information … as required by Rule 26(a) or (e), the party is not allowed to use that information … to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). It is clear that one of the reasons for the 'full disclosure' is to enable the opposing party to dispense with the time and expense of an expert's deposition since they can rely upon the opposing expert's Rule 26 report as setting forth the universe of his or

57117677;1

her opinions at trial, and thus avoid any surprise opinions at trial. Such reports "must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735 n6 (7th Cir. 1998) (citations omitted). The report "must not be sketchy, vague or preliminary in nature" and " must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Id.* (citations omitted).

Exclusion of opinions not contained in the expert's report "is also appropriate pursuant to Rule 16(b), which authorizes the district court to … preserve the integrity and purpose of the pretrial order, including the exclusion of evidence as a means of enforcing the pretrial order." *Potiguar v. Caterpillar Inc.*, 2016 WL 3102225 (S.D. Fla. 2016) (citations omitted) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990)).

While it is true that expert witnesses have a duty to supplement their Rule 26 reports pursuant to Federal Rules of Civil Procedure 26(e)(2), "[a]n expert's duty to supplement under Rule 26(e) is not a right to **supplement at will."** *Potiguar* at *6. Moreover, the supplement must be in the form of a written report, not surprise at trial. To hold to the contrary would negate the entire purpose of require expert reports in the first place. *See Salgado by Salgado* at 742 (holding that a party "had a right to know the conclusions of these particular expert witnesses with respect to this particular accident.").

The purpose of mandatory Rule 26 expert disclosures is to avoid trial by ambush and streamline the expert discovery process. *Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001). This is especially important when,

as here, expert reports and depositions were repeatedly delayed and took place very close to the trial date.

The expert report "must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Cousyn for Cousyn Grading & Demo, Inc. v. Ford Motor Co.*, 2019 WL 6434922, at *4 (C.D. Cal. July 17, 2019); citing *Hambrook v. Smith*, 2016 WL 4084110, at *2 (D. Haw. Aug. 1, 2016) (quoting *H.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010)). "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony." *Id*. "To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports." *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010).

Absent some new information that was not available at the time of the initial report, experts should not be allowed "to annul opinions or offer new ones to perfect a litigation strategy." *Lincoln Rock, LLC v. City of Tampa*, No. 2016 WL 6818959, at *6 (M.D. Fla. Nov. 18, 2016) (quoting *Cochran v. Brinkmann Corp*., 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009)). "The Federal Rules of Civil Procedure are designed to avoid surprise and thus to facilitate a proper ruling on the merits of each case." *Diaz v. Jaguar Rest. Group, LLC*, 627 F.3d 1212, 1214 (11th Cir. 2010). Testimony of all parties' experts should be limited to the opinions set forth in their Rule 26 reports, or as expressed at any deposition they gave in this case (where the opposing counsel would have had a chance to know of the opinion and cross examine the expert on that opinion), as this would avoid surprise and facilitate a ruling on the merits of the case. The "trial court exercises broad

57117677;1

discretion over the admission of evidence[.]" *U.S. v. Sarmiento-Perez*, 723 F.2d 898, 900 (11th Cir. 1984).

In the instant case, the Federal Rules of Civil Procedure require that expert witnesses disclose all opinions in a Rule 26 report, and there have been no new developments that would justify permitting any expert to provide opinions that were not set forth contained in their Rule 26 report.

Dr. Chan may be "monitoring" the "political situation in Hong Kong," but unless he provided a written report about his opinion regarding such matters, the introduction of opinions based on such monitoring violates the Federal Rules of Civil Procedure and Evidence to the incurable prejudice of WAN and should be precluded.

**PETITIONER'S MOTION *IN LIMINE* #3:**
**TO PRECLUDE EAVESDROPPING EVIDENCE**

WAN moves *in limine* to exclude recordings made by DEBOLT in the course of these proceedings in violations of the Court's order (dkt. 25) specifically prohibiting the parties from discussing the Court proceedings and related matters. WAN also moves to bar admission of recordings when DEBOLT refused to answer questions regarding their creation on Fifth Amendment grounds.

Illinois law prohibits the type of eavesdropping that DEBOLT has engaged in prior to and during this proceeding. Federal Law permits one party consent but only if "the purpose of recording the conversation is not to commit a 'criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *Century Consultants, Ltd. v. Miller Grp., Inc.*, No. 03-3105, 2005 WL 3108455, at *1 (C.D. Ill. Nov. 18, 2005) (citing 18 U.S.C. § 2511(2)(d)). Where such recordings have the plainly tortious purpose of violating a court order, Federal Law offers no protection and prohibits the admission of the tortious recordings.

Admission of the surreptitious recordings is also barred by Rule 37. DEBOLT did not disclose in his initial disclosures that he possessed or would rely upon audio or video recordings. Ex E. When he nonetheless created and presented such recordings to his retained expert, WAN sought to obtain *all* recordings, not merely those cherry-picked by DEBOLT. DEBOLT successfully opposed production of such videos, in part because they were not specifically requested in a Rule 34 request. Dkt. 83. Of course, without divulging reliance or existence on such videos in initial disclosures, WAN could not have known to ask. While Rule 37 broadly forgives discovery omissions which are harmless, here, a direct line can be drawn from DEBOLT's omission to WAN's prejudice in obtaining relevant discovery. Accordingly, exclusion under Rule 37 is appropriate.

Admission of the surreptitious recordings would also be prejudicial to WAN because DEBOLT prevented discovery of the nature and existence of other recordings by invoking the Fifth Amendment at deposition. DEBOLT's invocation (Dkt. 81-2), of the Fifth Amendment permits the inference that further such recordings exist. *Baxter v. Palmigiano* (1976) 425 U.S. 308, 318. DEBOLT himself has provided the additional evidence needed to infer his guilt in eavesdropping by producing and relying on videos that are the result of that eavesdropping activity and providing it to his expert. His presentation of those videos to Dr. Jaffe in this case functions as a waiver of that privilege, especially in a civil matter. *Alridge Elec., Inc. v. Fid. & Deposit Co. of Maryland*, No. 04 C 4021, 2006 WL 2536687, at *5 (N.D. Ill. Aug. 31, 2006) (citing *Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951)) ("federal courts have uniformly held that, where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details[.]").

The Fifth Amendment privilege cannot be invoked as a sword and a shield. *United States v. Davenport*, 929 F.2d 1169, 1174 (7th Cir. 1991) ("a witness who makes an incriminating statement cannot use the privilege against compulsory self-incrimination to block cross-examination by claiming that his answers to the cross-examining lawyer's questions may incriminate him"). Mr. Debolt is obviously aware, and has been advised by counsel, that recording an individual without their consent is illegal in Hong Kong and Illinois.[6] Nevertheless, he supplied some videos with audio taken without the knowledge and consent of at least his wife, and apparently in some circumstances his children.

The selective presentation of favorable recordings presents an obvious danger of distortion supporting a finding of prejudice. *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981) ("courts

---

[6] E.g., 720 ILCS 5/14-2

deciding testimonial waiver questions should be attentive to whether the witness' prior testimony has created a significant danger of distortion."). (citing *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), *E. F. Hutton & Co. v. Jupiter Development Corp.*, 91 F.R.D. 110, 116 (S.D.N.Y. 1981) (internal quotations omitted).

WAN sought to compel the production of additional recordings, which motion was denied (Dkt. 83). WAN was also prevented from seeking fair discovery into the recordings by DEBOLT's invocation of the Fifth Amendment. WAN is thus prejudiced by the admission of selective recordings and their admission should be denied under Fed. Rules of Civ. P. 26, 37, and Fed. Rule of Evid. 403.

## PETITIONER'S MOTION *IN LIMINE* #4: TO PRECLUDE UNTIMELY EVIDENCE

WAN moves *in limine* to preclude untimely evidence and exhibits. This includes:

Testimony of opinion witnesses presented after all deadlines for their identification and reports (Barrister Kay K. Chan).

On February 22, 2021, the parties exchanged exhibit list. Together with that production, Respondent provided a 3,271 page document titled "Debolt – Proposed Exhibits Not Previously Produced 02-22-2021." Buried in the production was a 16 page report from a Hong Kong barrister dated December 31, 2020 titled "Legal Advice (Textual Analysis) Prepared by Kay K W Chan, Barrister-at-Law."

Barrister Chan was not listed on any witness disclosure and the report was not timely produced under the scheduling order. Nevertheless, DEBOLT identified the report as an exhibit. WAN had no opportunity to depose or rebut Mr. Chan, and the exhibit should be precluded.

Respectfully submitted,

/s/Timothy Sendek                                          March 12, 2021
Timothy K. Sendek
Akerman LLP
71 S. Wacker Dr., 47th Floor
Chicago, Illinois 60606
Tel. 312-870-8007
tim.sendek@akerman.com

Jessica L. Sendek
Hensley Sendek Law LLC
124 S. County Farm Rd., Suite B1
Wheaton, IL 60187
630-358-9029
jessica@hensleysendeklaw.com

*Counsel for Petitioner*

57117677;1

## CERTIFICATE OF SERVICE

      I certify that on the date given below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record in accordance with Fed. R. Civ. P. 5(b)(2)(E).

/s/Timothy K. Sendek

March 12, 2021

57117677;1