**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| CHUNG CHUI WAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case Number: 3:20-cv-03233 |
| v. | ) | Judge Sue E. Myerscough |
| | ) | |
| MICHEL DALE DEBOLT, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT'S RESPONSES TO PETITIONER'S
MOTIONS *IN LIMINE***

Respondent, MICHEL DALE DEBOLT ("**Michel**"), by his attorneys, BEERMANN LLP and FELDMAN WASSER, responds as follows to Petitioner's Motions *In Limine* (Dkt. 93):

**LEGAL STANDARDS**

A district court's authority to rule on motions *in limine* is derived from its inherent authority to control the course of trials. *See Luce v. United States,* 469 U.S. 38, 41, n. 6, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). "[A] motion *in limine* should be granted only if the evidence sought to be excluded is clearly inadmissible for any purpose." *Noble v. Sheahan,* 116 F.Supp.2d 966, 969 (N.D.Ill.2000). Motions *in limine* are intended "to avoid the delay and occasional prejudice caused by objections and offers of proof at trial." *Wilson v. Williams,* 182 F.3d 562, 566 (7th Cir.1999). Such motions permit a district court to exclude evidence "that clearly ought not be presented to the jury," because it is inadmissible for any purpose. *Jonasson v. Lutheran Child and Family*

*Services,* 115 F.3d 436, 440 (7th Cir.1997). "[T]he party moving to exclude evidence *in limine* has the burden of establishing that the evidence is not admissible for any purpose." *Euroholdings Capital & Inv. Corp. v. Harris Trust & Sav. Bank,* 602 F.Supp.2d 928, 934 (N.D.Ill.2009).

Given that rulings on motions *in limine* "are made before the district court has had a chance to hear all of the evidence or see the trial develop," (*Currie v. Cundiff,* No. 09–cv–866–MJR, 2012 WL 2254356, at *1 (S.D.Ill. June 15, 2012)), they are preliminary and may be revisited based on the court's exposure to the evidence at trial. *United States v. Connelly,* 874 F.2d 412, 416 (7th Cir.1989).

## RESPONSE TO MOTION *IN LIMINE #1*
### To Exclude Certain Opinion Testimony of Dr. Alan Jaffe

### a.    Background.

In Petitioner's **Motion *In Limine* #1: To Exclude Certain Opinion Testimony of Dr. Alan Jaffe** ("Motion #1"), Wan argues (i) Dr. Jaffe is not qualified to offer his opinions on the risk of grave harm to the children if they return to Hong Kong and (ii) Dr. Jaffe's opinions should be barred because he has failed to comply with a disclosure requirement under Rule 26. As discussed below, Wan's Motion #1 is without merit and should be denied.

Michel retained and timely disclosed Dr. Jaffe, a Clinical Psychologist and Clinical Assistant Professor of Psychology and Behavioral Sciences at Northwestern University Feinberg School of Medicine with over forty years of experience to opine as an expert on the impact a return to Hong Kong would have on the parities' two minor children. On January 27, 2021, Dr. Jaffe timely

issued his expert report in this matter and, thereafter—by agreement of counsel—tendered nearly 400 pages of Rule 26 disclosures in addition to the disclosures within his report. Within the 32-page report, Dr. Jaffe opines that:

> "separating the Debolt children from their father and returning them to China/Hong Kong would create a clear and undeniable endangerment of a personal safety potential as well as psychological and emotional devastation for the Debolt children."

As disclosed in Dr. Jaffe's report, these conclusions are based on his expert analysis after hours of clinical interviews with Michel and each child as well as his review of extensive materials relating to the children and the Debolt family. Dr. Jaffe's investigation, however, was not undertaken in a vacuum. The context of the family's situation—Wan seeking an order requiring the children be returned to Hong Kong—necessarily provides the backdrop for Dr. Jaffe's opinions. Dr. Jaffe's report does not offer expert opinions on Hong Kong. Instead, Dr. Jaffe offers a psychological assessment of the significant damage the children would suffer if returned to Hong Kong, given Hong Kong's deteriorating social and political situation and the erosion of fundamental freedoms, as will be established by Michel at trial, including through his expert on the region, Dr. Ching Wai Phil Chan, whose initial report was considered by Dr. Jaffe as part of Dr. Jaffe's investigation.

### b. Dr. Alan Jaffe is Qualified to Offer his Opinions on the Grave Risks to the Children

Dr. Jaffe is qualified to testify to the grave risk of physical and psychological harm and otherwise intolerable situation to which the children

would be exposed if required to return to Hong Kong, and his expert opinion on this subject should not be barred.

Federal Rule of Evidence 702 provides:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 703 further states:

> "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

"When the Court serves as the factfinder, 'expert testimony should [generally] be admitted so that the Court could have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions.' " *Matter of Manhattan by Sail, Inc.*, 436 F. Supp. 3d 803, 810 (S.D.N.Y. 2020). Expert testimony should only be excluded where "it is speculative, conjectural, or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples to oranges

comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility of the testimony." (Internal quotation marks omitted.) *Electra v. 59 Murray Enterprises, Inc.*, 987 F. 3d 233, 253 (2d Cir. 2021); see also *Smith v. Family Video Movie Club, Inc.*, 11 C 1773, 2015 WL 1542663, at *5 (N.D. Ill. Mar. 31, 2015) (holding the bases and sources of an expert's opinions affect only the weight to be assigned those opinions rather than the admissibility of the opinion).

"There is no requirement that an expert personally perceive the subject of his analysis. (Internal quotation marks omitted.) *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005). Furthermore, nothing precludes an expert from reasonably relying on third party data and there is no hard and fast definition as to what constitutes reasonable reliance. *In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 924 (N.D. Ill. 2006). "Where an expert's opinion is based on information supplied by others, the inquiry into reliability must be made on a case by case basis and should focus on the reliability of the opinion and its foundation, rather than merely on the fact that it was based technically speaking, on hearsay." *Loeffel Steel Products, Inc.*, 372 F. Supp. 2d at 1119.

Wan does not argue Dr. Jaffe lacks experience to testify as to the psychological impact a return order to Hong Kong would have on the children. Wan does not argue it was improper for Dr. Jaffe to consider the circumstances in Hong Kong in opining on whether a return to Hong Kong would expose the children to a risk of grave harm—to do so would be nonsensical. Wan also does

not argue Dr. Jaffe's understanding of the current situation in Hong Kong is unfounded—or more significantly—that Dr. Jaffe's contentions concerning Hong Kong are so unrealistic or contradictory to suggest bad faith as would be necessary to exclude Dr. Jaffe's expert opinion testimony. See *Electra, Inc.*, 987 F. 3d at 253.

Instead, Wan conflates Dr. Jaffe's opinions as to the children's exposure to grave risk should they be returned to Hong Kong— relying on third party sources establishing the situation in Hong Kong in so doing— with Dr. Jaffe offering expert opinions on the state of affairs in Hong Kong, which Dr. Jaffe does not. Regardless, Dr. Jaffe's understanding of the situation in Hong Kong are consistent with, and will be established through, Dr. Chan at trial. Dr. Jaffe's understanding of the circumstances in Hong Kong is also consistent with various government publications, government statements, foreign laws and mandates, reports relevant to the Court's determination of foreign law that would impact the children, and several news articles which will be submitted to this Court for consideration pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence. It will then be for this Court to determine what weight is to be given to Dr. Jaffe's expert witness opinion testimony. Wan is not entitled to have Dr. Jaffe's expert opinion testimony barred.

### c.   Federal Rule Civil Procedure 26(a)

Wan also argues Dr. Jaffe's expert opinions should be barred because of a purported failure to comply with Rule 26(a)'s mandate to by "provide the facts

and data relied upon in forming his opinions contained in his Expert Report."
(Wan's Motion #1, p. 8 of 18). Wan is not entitled to this requested relief.

Rule 26(a)(2)(B) provides for certain disclosures to be made along with a
testifying expert's written report and states in relevant part as follows:

> "The report must contain:
> (i) a complete statement of all opinions the witness will
> express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in
> forming them; ***" Fed. R. Civ. P. 26(a)(2)(B).

The Court only has discretion to order sanctions where the moving party
has met their heavy burden to establish an abuse of Rule 26 has occurred. *Ashe
v. Distribuidora Norma Inc.*, 965 F. Supp. 2d 212, 217 (D.P.R. 2013). Even where
such abuse is established, absent a showing of harm, the Court may not invoke
the *severe* exclusionary penalty provided for in Rule 37(c)(1). *Id.* at 218. Factors
to be considered in the Court's determination of whether there was harm include:
"(1) the importance of the information withheld; (2) the prejudice or surprise to
the party against whom the evidence is offered; (3) the likelihood of disruption of
the trial; (4) the possibility of curing the prejudice; (5) the explanation for the
failure to disclose; and (6) the presence of bad faith or willfulness in not
disclosing the evidence (the '*Pennypack* factors')." *B. Braun Melsungen AG v.
Terumo Med. Corp.*, 749 F. Supp. 2d 210, 221 (D. Del. 2010).

Moreover, where potential preclusion of an expert witness is sought, as is
the case here, "the Court must examine various factors: (a) 'the opponent-party's
ability to overcome its adverse effects (i.e., harmlessness); (b) the history of
litigation; (c) the late disclosure's impact on the district court's docket; and, (d)

the sanctioned party's need for the precluded evidence.'" *Ashe*, 965 F. Supp. 2d at 217. Courts should also consider whether the dereliction was obvious and repeated and whether the party was guilty of several discovery violations besides those related to the expert witness. *Id.* There is no basis for the relief sought by Wan.

Within his report, Dr. Jaffe cites to specific authority relied on in formulating his opinions that the children would be exposed to a grave risk of harm if returned to Hong Kong. In her motion Wan highlights these citations disclosed in Dr. Jaffe's report as follows: *Waddoups et al.*, 2019, *Krueger*, 1983; *Coghill et al.*, 2009; *Briggs-Gowan et al.*, 2019, and *Ward et al.* Wan does not contend that Dr. Jaffe failed to disclose these authorities considered by him in forming his opinions. On the contrary, she states that "[t]hroughout Dr. Jaffe's report, he references authors that he relied upon in forming his opinions", thus confirming Dr. Jaffe's disclosure. (Wan's Motion #1, pp. 4-5 of 18). Instead, Wan argues the content of the citations are insufficient because "Dr. Jaffe has not provided any information, aside from the author's name with a date." (Wan's Motion #1, p. 7 of 18). This, however, is not a violation of Rule 26. Even if Dr. Jaffe's citation to these authorities in his report was somehow deficient, Wan cites no authority justifying the nuclear option of barring his entire opinion on this basis. She easily could have obtained more detailed information and allowed Dr. Jaffe to cure this alleged deficiency, rather than waiting until the eve of trial to file a motion to bar. Nevertheless, additional details for the disclosed authorities have been or will shortly be provided to Wan.

Wan also argues Dr. Jaffe relied on "*several* articles on Hong Kong in formulating his opinions regarding the risk to the children if they return to Hong Kong." (Wan's Motion #1, p. 7 of 18). It should be noted that in Wan's footnote containing Dr. Jaffe's deposition testimony in support of this contention, Dr. Jaffe twice testified he only relied on "a couple of articles." (Wan's Motion #1, fn. 5).

This overstatement aside, Wan cannot establish harm under the *Pennypack* factors, nor does Wan even attempt to do so in her Motion #1. Given the breadth of disclosures by Dr. Jaffe and the purpose of his opinion testimony, which was tested by deposition, the importance of the articles substantiating some of his data on Hong Kong are of minimal value. There is no prejudice or surprise to Wan, particularly as Dr. Jaffe is not the Hong Kong expert. The trial will not be disrupted. The nondisclosure was inadvertent and corrected, and no bad faith was involved. To this point, Dr. Jaffe testified at his deposition that the omission of the Hong Kong articles from his Rule 26 disclosures was an oversight. (Wan's Motion #1, fn. 5). In any event, the articles have been or will shortly be tendered to Wan. Furthermore, given the sensitive and significant nature of the issues raised in this matter—the grave risk of emotional and physical harm to two minor children—this Court should not be precluded from considering this important evidence supporting a refusal of an order returning the children to Hong Kong.

As previously noted, nearly 400 pages of Rule 26(a)(2)(B) disclosures were provided to Wan in conjunction with Dr. Jaffe's expert report. Dr. Jaffe's report

further referenced 37 documents reviewed by him which were tendered to Wan in discovery. The referenced documents include various pleadings filed in this matter, the parties' respective dissolution of marriage filings, the Guardian ad Litem's report, electronic family communications, recordings, and family photographs. In addition to this information, Dr. Jaffe's report referenced the expert report prepared by Dr. Phil C.W. Chan, Michel's Hong Kong and China expert, analyzing and opining on the deteriorating political situation in Hong Kong and the erosion of human rights and fundamental freedoms of residents of Hong Kong. Dr. Jaffe's report also referenced an email dated November 14, 2020 entitled "New NSL Hotline for Snitches Flooded with Calls" tendered in discovery containing a link to the South China Morning Post's November 14, 2020 article by Christy Leung entitled "Hong Kong's Controversial national security law tip line gets 10,000 messages in first week of operation."[1]

Yet, Wan seeks to have Dr. Jaffe's entire expert opinion barred based on the inadvertent and minor exclusion of a couple of articles that merely give context to some of his data on Hong Kong which merely provide the backdrop for Dr. Jaffe's expert opinions concerning—not Hong Kong—but the grave risk of harm to which the parties' minor children would be exposed should they return to Hong Kong. Dr. Jaffe did not provide expert opinions with respect to Hong Kong—this is the role of Dr. Chan.

---

[1] The article link disclosed along with Jaffe's report was: https://www.scmp.com/news/hong-kong/law-and-crime/article/3109867/hong-kongs-controversial-national-security-law-tip

The Hong Kong articles were not the only sources of Hong Kong information considered by Dr. Jaffe as factual underpinnings for his opinions with respect to the minor children and their exposure to grave harm. Again, Dr. Jaffe considered Dr. Chan's original expert report analyzing and opining on the deteriorating political situation in Hong Kong. Dr. Jaffe also disclosed a number of discussions with Michel and the children concerning Hong Kong including the children's awareness of Hong Kong's current political climate, their negative views about Hong Kong, and their understanding that expression of certain beliefs could subject them to criminal penalties.

Moreover, while Wan claims she is prejudiced because she unable to review, analyze, and determine the credibility of facts and data relied upon by Dr. Jaffe in forming the opinions contained in his report, it should also be pointed out that Wan retained a rebuttal expert, Dr. Shapiro, who prepared a report to rebut to Dr. Jaffe's opinions in this matter. Michel maintains Dr. Shapiro's report is not proper rebuttal; however, the basis for this position is wholly independent of any allegations forming the basis for Wan's Motion #1.

For the aforementioned reasons, Wan's Motion *In Limine* as to Dr. Jaffe should be denied.

### <u>RESPONSE TO MOTION *IN LIMINE #2*[2]</u>
### <u>To Preclude Non-Disclosed Opinion By Phil C.W. Chan</u>

In her second Motion *In Limine*, Wan seeks to bar Michel's expert witness on Hong Kong laws and affairs from testifying as to any new opinions at trial, including any events which have taken place since Dr. Chan issued his updated Report on January 27, 2021. Apparently, Wan is concerned about the statement in Dr. Chan's Report that:

> As the political situation in Hong Kong and related matters remain highly volatile, my expert report *ensemble* refers to cases, events and incidents that have taken place as [of] January 27, 2021. **I shall continue to monitor the political situation in Hong Kong and related matters in assisting the Court in its determination of the matter at bar as it moves forward**. (Chan Report, p. 49 of 57) (Emphasis added.)

She contends that "Dr. Chan should not be permitted to provide any opinions that were not contained within the four corners of his reports required by Federal Rule of Civil Procedure 26(a)(2)(B)…" (Motion *In Limine,* p. 10).

Wan's motion is without merit for several reasons.

First, her synopsis of the law regarding the scope of what an expert may testify to at trial is unduly restrictive and, accordingly, inaccurate. While an expert may not blurt out new opinions willy-nilly from the witness stand, it is equally true that an expert's testimony is not limited to the "four corners" of the expert's report. Rather, an expert may explain, elaborate upon, and even supplement the report within the scope of the stated opinions. As explained by

---

[2] Petitioner's second and third Motions *in Limine* are both labeled "#3." (Dkt. 93, page 10, 14).

the D.C. Circuit Court of Appeals in *Muldrow ex rel. Est. of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007) (Emphasis added):

> Under Rule 26(a)(2)(B), a party using an expert witness must disclose a report containing, inter alia, "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B). The purpose of the rule is to eliminate "unfair surprise to the opposing party." *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 284 (8th Cir.1995). **But it "does not limit an expert's testimony simply to reading his report.... The rule contemplates that the expert will supplement, elaborate upon, [and] explain ... his report" in his oral testimony**. *Thompson v. Doane Pet Care Co.,* 470 F.3d 1201, 1203 (6th Cir.2006); *see Minebea Co. v. Papst,* 231 F.R.D. 3, 8 (D.D.C.2005).

Second, unlike cases in which a court is asked to adjudicate the legal consequences of past events—which are fixed in time—this case calls upon the court to project the potential consequences to the children if they are returned to Hong Kong—which is in the throes of political turmoil amid weekly if not daily developments.

Dr. Chan's Report details the tumultuous circumstances in Hong Kong—including, but not limited to a draconian National Security Law imposed by China, mass arrests and prosecutions, and a myriad of other circumstances which combine to imperil the children' s rights, freedoms, and well-being.

Dr. Chan's core and unwavering opinions in relation to the children include:

**II. Return of the Children from the United States to Hong Kong jeopardizes the Children under Article 20 of Hague Convention – "the fundamental principles of the requested States relating to the protection of human**

**rights and fundamental freedoms." (Summary of Dr. Phil C.W. Chan's Expert Report (1.6.2021) and Supplemental Expert Report (1.27.2021) ("collectively, "Chan Report") (p. 2 of 57.)**

**III.   There is a "grave risk" that return of the Children from the United States to Hong Kong "would expose the [Children] to physical or psychological harm or otherwise place the [Children] in an intolerable position" within the meaning of Article 13(b) of Hague Convention. (Chan Report, p. 6 of 57.)**

Dr. Chan supported his opinions with detailed documentation and explanation of the *ongoing* circumstances in Hong Kong. Indeed, a *key element* of his opinions is that the troubling circumstances detailed in this report are "*ongoing*" and "*volatile*." For example, Dr. Chan states:

> It is the respectful opinion of the expert witness that the Court is entitled and compelled under international law and the laws of the United States to determine that the fundamental principles of the United States relating to the protection of human rights and fundamental freedoms necessitate a determination that the Children should not be returned to Hong Kong, in light of Hong Kong's *ongoing political instability* and China's imposition of a National Security Law on Hong Kong. (Chan Report, p. 6 of 57) (Emphasis added.)

Similarly, in paragraph 8 of the supplemental section of his Report, Dr. Chan stated:

> As the political situation in Hong Kong and related matters remain *highly volatile*, my expert report *ensemble* refers to cases, events and incidents that have taken place as [of] January 27, 2021. I shall continue to monitor the political situation in Hong Kong and related matters in assisting the Court in its determination of the matter at bar as it moves forward. (Chan Report, p. 49 of 57) (Emphasis added.)

The various cases cited by Wan in her motion are inapposite in that they deal with attempts to supplement reports to cure deficiencies therein with information *available* at the time of the report. However, as Wan concedes, Rule 26(e) permits supplemental reports advancing even new opinions based on "information that was not available at the time of the initial report." (Internal quotation marks omitted.) *Lincoln Rock, LLC, V. City of Tampa*, No. 2016 WL 6818959, at *5-6 (M.D. Fla. Nov. 18, 2016). Here, however, Chan's original opinions—properly based, in part, on news stories and other events occurring in Hong Kong prior to his report—have not changed. Instead, new events occurring in Hong Kong since the issuance of Chan's reports only confirm and bolster Chan's original conclusions. Wan cites no authority that would preclude Chan from considering the previously unavailable new events unfolding in Hong Kong, particularly where Michel continues to disclose the new information being considered in accordance with his obligation to supplement discovery.

Again, Dr. Chan will not be surprising Wan with any new opinions at trial, but it goes without saying that no one who has any concern for the children should be willfully ignorant of any significant developments in relation to Hong Kong, including events which have occurred since January 27, 2021, and which may yet occur. All one has to do to avoid being surprised is to read the news, including the supplemental disclosures as to certain current events in Hong Kong provided to Wan in accordance with Federal Rule of Civil Procedure 26(e).

For example, *just last week,* Beijing dictated a much-publicized overhaul of Hong Kong's electoral system to effectively assure that only patriots loyal to

China will be allowed to run for election to Hong Kong's Legislative Counsel. Wasting no time, on Friday, March 12, the G7 Foreign Ministers of Canada, France, Germany, Italy, Japan, the United Kingdom and the United States of America and the High Representative of the European Union issued a statement condemning China's latest action:

> We, the G7 Foreign Ministers of Canada, France, Germany, Italy, Japan, the United Kingdom and the United States of America and the High Representative of the European Union, are united in expressing our grave concerns at the Chinese authorities' decision fundamentally to erode democratic elements of the electoral system in Hong Kong. Such a decision strongly indicates that the authorities in mainland China are determined to eliminate dissenting voices and opinions in Hong Kong.
>
> The package of changes approved by the National People's Congress, combined with mass arrests of pro-democracy activists and politicians, undermines Hong Kong's high degree of autonomy under the "One Country, Two Systems" principle. The package will also stifle political pluralism, contrary to the aim of moving towards universal suffrage as set out in the Basic Law. Furthermore, the changes will reduce freedom of speech, which is a right guaranteed in the Sino-British Joint Declaration.[3]

Just this past weekend, on Saturday, March 13, 2021, the following headlines appeared in the South China Morning Post concerning cameras in classrooms to monitor compliance with the National Security Law:

---

[3] https://www.state.gov/g7-statement-on-hong-kong-electoral-changes/

Hong Kong / Education

## Hong Kong officials ask schools if they have installed CCTV, after some lawmakers called for cameras to be installed in classrooms

- Pro-Beijing legislators suggested installing cameras to monitor teachers, but educators warned such a move would be disrespectful to the profession
- At least nine schools confirm officials called them on Friday to find out whether they had set up the devices – and if so, at what locations



**Chan Ho-him**
Published: 4:50pm, 13 Mar, 2021 ▾

Why you can trust SCMP

4

Is Dr. Chan supposed to ignore such recent news, which supports *his already stated opinions* as to the deplorable situation that the children will face if they return to Hong Kong? Is Michel? Is the Court? While these developments are new events, they are part and parcel of, and validate, the concerns expressed in Dr. Chan's Report. His opinions remain the same, but the proof continues to accumulate.

Wan's Motion *In Limine* as to Dr. Chan should be denied.

---

4 https://www.scmp.com/news/hong-kong/education/article/3125330/hong-kong-education-authorities-ask-schools-whether-they

<u>**RESPONSE TO MOTION *IN LIMINE* #3**</u>
<u>**To Exclude Eavesdropping Evidence**</u>

As its title suggests, Wan's third Motion *in Limine* seeks to bar Michel from introducing what she characterizes as "eavesdropping evidence" at trial. While Wan's failure to actually identify the offending exhibits—despite having had a copy of Michel's exhibit list since February 22, 2021—makes responding to her Motion difficult, as best Michel can tell, Wan seeks to exclude his exhibits 12, 13, and 14, which are audio recordings of Wan physically abusing the children in Hong Kong months before she filed suit.

Without any explanation or analysis, Wan submits that these recordings must be excluded because (1) they violate Illinois law and court orders, (2) they will take her by surprise, and (3) Michel did not produce other recordings, which may or may not exist and which she never requested in discovery. For the reasons set forth below, this Motion should be denied.

> **a. Michel's Exhibits are Neither Unlawful Nor Violate Any Court Order.**

Wan first submits that these recordings must be excluded because "Illinois law prohibits the type of eavesdropping that [Michel] has engaged in prior to and during this proceeding." There is no merit to this argument.

First, the recordings in question were made in 2020 and while both parties and the children were physically in their Hong Kong apartment. Wan had not yet commenced this litigation and neither party was present in Illinois. Wan fails to explain how federal or Illinois state law applies to these recordings. It does not.

Second, assuming Federal law applies to recordings made abroad, as Wan correctly notes, it explicitly permits recordings with the consent of only one party. 18 U.S.C. §2511(d)(2). In an effort to avoid this inconvenient fact, Wan submits, without any basis, that they must nevertheless be excluded because these recordings—made months before she filed her Petition—fall under an exception for tortious conduct because they "have the plainly tortious purpose of violating a court order." (Dkt. 93 at 14). Wan's failure to identify how Michel's May and July, 2020 recordings violate orders in a case filed in October, 2020 is simply illogical. In the absence of any explanation as to how Michel violated orders which did not exist, this argument must be rejected.

Third, to the extent Illinois state law applies to proceedings arising under Federal law and over which this Court has original jurisdiction, the exclusion of these recordings is still not warranted because Illinois law does not bar the admission of one-party recordings made outside of Illinois. See *People v. Accardo*, 195 Ill. App. 3d 180 (2d Dist. 1990) (finding recording of Illinois defendant made from Oklahoma admissible).

Finally, while far from clear, to the extent Wan seeks to bar the admission of a recording of the parties' son taken on December 17, 2020 (Michel's Exhibit 17), this effort must similarly be rejected because (a) it does not qualify as "eavesdropping evidence" in any sense of the term (indeed, Wan was neither present physically or electronically during the recording) and (b) nothing therein violates any provision of paragraph 11 of this Court's October 29, 2020 Order.

### b. Michel Timely Disclosed These Recordings in Discovery.

Wan next submits that these recordings should be barred under Rule 37, not because Michel did not disclose them in response to her written discovery requests (he did), but because he did not list them on his initial Rule 26(a)(1) disclosures. Despite receiving these videos prior to Christmas, Wan argues that their use at trial would prejudice her because she "could not have known to ask" about them due to their absence on that initial disclosure. (Dkt. 93 at 14). Charitably speaking, this argument is nonsense.

First, Michel produced these recordings in response to her Rule 34 request No. 11 on December 21, 2020, as noted below:

**REQUEST NO. 11:** Any and all documentary evidence and/or proof of Wan's recurring mistreatment of the children through excessive physical disciplining, as alleged in paragraph 4e of your Affirmative Defenses to Wan's Hague Petition.

**Answer:** See the attached:

- Audio recordings;

4

Second, on January 15, 2021, nearly a month after receiving these recordings, and a day after taking Michel's deposition, Wan issued a second set of Rule 34 requests in which she failed to ask for the production of any additional recordings, despite having every opportunity to do so. Her suggestion that the use of these recordings will somehow prejudice her is belied by her own conduct.

### c. Wan's Remaining Arguments Have Twice Been Rejected. They Need Not be Considered Again.

In her final effort to exclude evidence of her own misconduct, Wan resurrects the argument, twice rejected in these proceedings, that Michel's supposed failure to produce additional recordings—which she never properly sought—somehow forms a basis to bar the admission of materials properly disclosed in discovery.

Rather than belaboring the point, Michel incorporates the arguments advanced in his Response to Wan's Motion to Compel (Dkt. 82) and notes that this Court and Judge Schanzle-Haskins have both considered and rejected Wan's arguments with respect to these recordings. (Dkt. 83, 94). Her third bite at the apple should meet a similar fate.

## RESPONSE TO MOTION *IN LIMINE* #4
## To Preclude Untimely Evidence

In her final Motion *in Limine*, Wan vaguely seeks to "preclude untimely evidence and exhibits." She goes on to identify only a single offending document, a legal opinion regarding Hong Kong law identified as Michel's exhibit 159 (the "Barrister Report"). For the reasons set forth below, this argument must be rejected, both due to its vagueness and under FRCP 44.1.

Preliminarily, Wan's fourth Motion only identifies a single document. To the extent she seeks to bar the introduction of other, unidentified exhibits which she claims are untimely, her request must be denied for lack of specificity. *See, e.g., Hill v. City of Chicago,* 2011 WL 3205304, at *4 (N.D.Ill. Jul. 28, 2011) (denying defendants' motion *in limine* which failed to specify the documents it sought to exclude ); *Gonzalez v. Olson*, 11 C 8356, 2015 WL 3671641, at *12 (N.D. Ill. June 12, 2015) (denying as overbroad motion *in limine* "that it is not specific with respect to the evidence to which it is directed").

Insofar as Wan is only seeking to exclude the Barrister Report on timeliness grounds, this argument, too, must fail because this exhibit is relevant for this Court's determination of Hong Kong law, a crucial issue in this matter, as raised in the pleadings. (See Dkt. 15, 27, 95). Part and parcel of this Court's evaluation of Michel's affirmative defenses is an inquiry into the laws of Hong Kong under mainland China's increasing influence. Under Rule 44.1 ("Determining Foreign Law"), this Court is permitted to consider "***any*** relevant

material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

The scope of materials this Court can consider under this rule is far broader than the limitations imposed by the rules of evidence or the rules regulating discovery. For example, in *Kalmich*, the Seventh Circuit held that the trial court properly considered an unsworn opinion and untimely letter of plaintiff's expert on Yugoslavian law under Rule 44.1 when resolving a question of that nation's law. See *Kalmich v. Bruno*, 553 F.2d 549, 555, fn. 4 (7th Cir. 1977). A slew of other decisions have followed suit. *See, e.g.,United States v. First Nat. Bank of Chicago*, 699 F.2d 341, 343–44 (7th Cir. 1983) (addressing evidence of Greek law in the form of letters and affidavits, and holding "there can be no doubt that the district court was entitled to consider the letters, affidavits, and translations before it, and could properly have based its determination on that evidence."); *Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613, 615 (11th Cir. 1992) ("When analyzing foreign law, the district court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

The takeaway from these cases is that materials designed to aid this Court in its determination of foreign law pursuant to Rule 44.1—such as the Barrister Report—may be properly considered and are not subject to the strictures of Rule of Evidence 702 or *Daubert*. *HFGL Ltd. v. Alex Lyon & Son Sales Managers & Auctioneers, Inc.*, 264 F.R.D. 146, 148–49 (D.N.J. 2009) ("The Davies Report, however, is provided to the Court for the purpose of aiding the Court's

determination of English law under Fed.R.Civ.P. 44.1, not as factual report to be admitted into evidence. The "use of an expert report to assist the [C]ourt in its determination of foreign law is entirely different from use of an expert report, pursuant to Rule 702, Fed.R.Evid., to aid the jury in determining the facts. *** accordingly, the Court concludes that it may properly consider the Davies Report pursuant to Fed.R.Civ.P. 44.1.") (citations omitted).

Like the reports in the aforementioned cases, the Barrister Report provides this Court with vital context regarding the laws of Hong Kong, and will indisputably assist this Court in making a determination of Hong Kong law and how that law may affect the children. Wan's attempt to exclude it must be denied.

<div style="margin-left:40%">

**BEERMANN LLP**
Attorneys for Respondent
Michel Debolt

/s/ *Matthew D. Elster*

</div>

Matthew D. Elster
**BEERMANN LLP**
*Attorneys for Respondent, Michel Debolt*
161 North Clark Street, Suite 3000
Chicago, Illinois 60601
Tel:  (312) 621-9700
Fax:  (312) 621-0909
Email:  mdelster@beermannlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of March, 2021, a copy of the attached document was filed via the court's CM/ECF system, which will send electronic notice to all counsel of record who have appeared in this case.

 /s/ *Matthew D. Elster*