IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS – SPRINGFIELD DIVISION

| | |
|---|---|
| CHUNG CHUI WAN,<br>　　　Petitioner, | )<br>)<br>)    Case No.: 3:20-cv-03233 |
| v. | )    Judge Sue E. Myerscough<br>) |
| MICHEL DALE DEBOLT,<br>　　　Respondent. | )<br>) |

**PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION IN LIMINE (DKT. 89)**

Respondent Michel Debolt ("Debolt") moves to completely bar rebuttal testimony from Petitioner Chung Chui Wan's ("Wan's") psychological expert (Dr. Robert Shapiro) in response to Debolt's Psychological expert. Respondent argues that the requested total bar is appropriate because Dr. Shapiro submitted his report as a rebuttal report. Dr. Shapiro's opinions, argues Respondent, are not a proper rebuttal "in any way whatsoever." Motion ¶12.

This is simply not true. Dr. Shapiro's opinions are *only* a rebuttal to Dr. Jaffe's opinions. Dr. Shapiro will not be called in Petitioner's case in chief and his opinions do not

1

relate *at all* to any element of any issue upon which Petitioner bears the burden of proof.  Dr. Shapiro's opinions bear *only* on affirmative defenses raise by Debolt.

Debolt correctly notes that initial reports are meant for issues upon which the party bears the burden of proof, and rebuttal reports may present expert opinions refuting initial reports.  Motion ¶11.

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't,* 535 F.3d 621, 630 (7th Cir. 2008) (citations omitted). Improper rebuttal is "Testimony offered only as additional support to an argument made *in a case in chief,* if not offered to contradict, impeach or defuse the impact of the evidence offered by an adverse party."  *Id.*  (citations omitted) (emphasis added).

The question then becomes: What part of Dr. Shapiro's testimony, if any, is offered to support an element of Petitioner's case in chief, rather than to rebut Dr. Jaffe? The answer is none.

Wan bears the burden of proof to show that (1) the children are habitual residents of Hong Kong, (2) She is their mother and thus entitled to parental custody rights, (3) she was exercising those rights before the children were abducted, and (4) the children were wrongfully abducted. *See* Petitioner's Trial Brief (Dkt. 96) at 19, 33-39 ("Petitioner's case in chief is straightforward and factual. Her children were abducted from her. It will not involve expert witnesses to establish this fact.").  The involvement of *all* expert witnesses in this case are *entirely* related to defenses raised by Debolt for which he bears the burden of proof.

### **Dr. Jaffe Arguments Rebutted by Dr. Shapiro**

Jaffe offers the argument that one way in which the children would face a "grave risk" (Debolt's primary affirmative defense) would be through the "Effects of Losing a Parent." Jaffe report, 26-30. The core of Jaffe's argument is that Debolt is a better parent than Petitioner.[1]

Jaffe points to Petitioner's status as a working mother, the parents' "emotional availability," frequency of taking to appointments and activities, reading, and other interactions with the children. Report at 26. Jaffe argues that the children "seem to be adapting relatively well to living in Illinois after being separated from their mother" because Debolt is their "primary caregiver." Report at 27. Jaffe claims that "Michel provides emotional support after instances in which Wan has caused emotional distress," pointing to secretly-recorded videos of the children. Jaffe

---

[1] Petitioner denies Jaffe's recitation of the facts. Petitioner also makes no admission as to the relevance of assertions made by Jaffe or whether they can constitute "grave risk" under Article 13b of the Hague Convention. See Petitioner's Trial Brief, Dkt. 98, at 20-25. Indeed, Jaffe's core argument has been found invalid as a Hague Convention defense. *Id.* at 25-26.

4

points to what Debolt has termed a "banana incident" from 2018 (which Debolt's trial brief emphasizes at length). Jaffe points to Petitioner's use of spanking (though essentially ignores Debolt's admitted use of the same). He claims that "Additionally, Michel appears to provide more warmth and emotional support for the children." Report at 29. Jaffe further argues that this grave risk exists because "Without Michel, the children will not have access to the same degree of emotional support and comfort, nor will they have the same access to a biological caregiver as they have while living with their father currently." Report 29. In short, Dr. Jaffe's opinions relate to a multitude of comparisons of the parties' relationships to their children.

    The other "grave risk" argued by Jaffe is living in a "culture of silence." Report 30-31. Here, Jaffe relies on assertions about Hong Kong with political statements elicited from the children through leading questions.

All of this is presented in Dr. Jaffe's opinions on "losing a parent," and "culture of silence" which he claims supports his ultimate conclusion that "In consideration of the aforementioned, separating the Debolt children from their father and returning them to China /Hong Kong would create a clear and undeniable endangerment of a personal safety potental [sic] as well as psychological and emotional devastation for the Debolt children."  Report at 32.

It is this ultimate opinion, and the aforementioned underlying foundations, that Dr. Shapiro's report addresses.

Debolt complains that Dr. Shapiro's report is "admittedly" his own independent evaluation.  Motion ¶12.  Debolt emphasizes that Dr. Shapiro informed Petitioner that his process would be impartial.  Motion ¶13.  It is not clear why Debolt believes it is a "gotcha" worthy "admission" that Dr. Shapiro was impartial and independent.  Debolt goes on to argue that a rebuttal cannot be considered impartial.

Motion ¶13. Despite offering no support for this claim, this leads to the illogical conclusion that *only* an admitted partisan opinion witness may offer a rebuttal report.

Debolt complains numerously that Dr. Jaffe had "no access" to Petitioner. Motion ¶¶ 18, 19, 21, 23. But this is not so. Indeed, Petitioner offered to facilitate bringing the children to Dr. Jaffe's office in Chicago—she proposed numerous dates to do so. Dkt. 59-3 (emails offering to facilitate meetings with Dr. Jaffe in Chicago). Dr. Shapiro reached out to Debolt in several phone calls (which went unreturned). Jaffe never reached out to Petitioner.

The "no access" of which Debolt now complains did not prejudice Dr. Jaffe. He cites extensively to Petitioner's text conversations and deposition. He confidently makes statements like "Michel appears to provide more warmth and emotional support for the children," remarks on Petitioner's "emotional availability," involvement in schoolwork,

7

activities, and the children's lives in general. Jaffe's report does not indicate any willingness or need to speak to Petitioner. Rather, in his deposition, he stated he did not have enough time (Jaffe was retained November 9, 2020). Jaffe Dep. Tr. 29:11-25; see also 30-31 (retention). Jaffe did not make any attempt to gather information from anyone but Debolt including the GAL. *Id.* at 31.

Of course, Debolt could also have made a request under Rule 35 for a mental examination of Petitioner providing the same information Jaffe collected from Michel.

Dr. Shapiro's rebuttal tracks the subject matter and addresses the conclusions of the Jaffe report. It does not opine on any matters related to Wan's case in chief (like habitual residence) or matters related to Debolt's defenses that Jaffe did not address (like whether T.J.D. is sufficiently mature under Article 13 of the Hague Convention). Aside from background gathered from documentation and the

interviews with Wan and the children, *every single paragraph* in Dr. Shaprio's report discusses Dr. Jaffe's report and conclusions or contradicts those conclusions. See Shapiro report, 12-18. In particular, every paragraph of the "Opinion" section starting at page 17 addresses grave risk of harm (Debolt's affirmative defense and burden, argued by Dr. Jaffe).

## Argument

Viewed in the context of applicable case law—even the extremely limited case law selected for presentation by Debolt—the Shapiro rebuttal is proper.

*Baldwin*, cited by Debolt, is a patent case which illustrates an improper attempt to use "rebuttal" testimony to bolster one's case in chief. In *Baldwin*, the plaintiff Baldwin alleged infringement of two patents by the defendant Siebert. In a patent case, the plaintiff/patentee bears the burden of proof on issues of infringement whereas

the defendant bears the burden of proof on issues of the invalidity of the patent(s). *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005). Defendant offered testimony in its initial report that claims of one patent were invalid, offering no opinion on the validity of the other. *Id.* at *1. In rebuttal, Defendant offered testimony from two other experts that claims of the second patent were also invalid, as well as a claim in the first patent not addressed in the first report. *Id.* The *Baldwin* court struck the "those portions of its rebuttal report that should have been disclosed in its initial expert report"—the validity arguments. *Id.* at *3. At the same time, the *Baldwin* court permitted responsive arguments to the strength of the Plaintiff's initial report, e.g. on claim construction. *Id.*

Debolt also cites *IBM v. Fasco Indus. Inc.* 1995 WL 115421 (N.D. Cal. Mar. 15, 1995) for the proposition that rebuttal experts "cannot put forth their own theories; they

must restrict their testimony to attacking the theories offered by the adversary's experts."

Addressing *IBM* and another case, *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson,* 2016 WL 7042085, at *5 (C.D. Cal. Aug. 17, 2016) found that "Neither of these cases can be fairly read to exclude a different methodology addressing the same problem."  Rather, in discussing the same language from *IBM* that Debolt cites, the *TCL* court noted that "One needs to take a closer look at what the excluded 'own theories' were." In *IBM*:

> [T]wo of Fasco's rebuttal experts should have been designated on the initial disclosure date because they plan to opine on subjects that IBM's experts will not address. James Samuel McKnight will testify on the industry custom and practice for testing blowers, industry standards for blowers and accelerated life testing. IBM has not designated an expert to opine on these issues, so McKnight will have nothing to rebut. Similarly, Fasco's expert economist, John Bourg, plans to devote part of his testimony to subject matter outside the scope of IBM's experts' testimony; i.e., to out-of-pocket damages.

*IBM* at *3.

The *TCL* court offers the following example:

> Suppose an expert used a micrometer to measure the dimensions of a very small particle. In rebuttal, the opponent offered measurements of the same particle using an electron microscope with greater accuracy in the orders of magnitude. The Court doubts the second expert's opinion of the size of the particle would be excluded because he used a different methodology to address the same problem: the size of the particle.
>
> Here, so long as Ericsson's experts do not stray from the "same subject matter" as TCL's experts, **it is proper for those experts to utilize their own independent analyses and methodologies to arrive at conclusions that rebut TCL's expert's conclusions**.

*Id.* at *5 (emphasis added).

Likewise, in TCL, the court found that "the fact that Ericsson developed its expert reports before the deadline for initial expert reports" was a "red herring." *Id.* at *4. As the court explained:

> The timing of the work of Ericsson's experts has nothing to do with whether or not their reports, in fact, rebut TCL's experts. Ericsson's experts could well have anticipated the subject matter that TCL's experts were likely to address and prepared their reports in anticipation of that subject matter before knowing, as a certainty, that TCL's experts would address those

topics. **Such anticipation would not deprive Ericsson's expert's reports of their rebuttal status**.

*Id.* (emphasis added). The Court further agreed that "an expert's use of alternate methodologies and contrary facts does not transform rebuttal into an opening report." *Id.*

The timing of Dr. Shapiro's meetings with the children is offered by Debolt as a basis that his report cannot be a rebuttal. Motion ¶15, 17.

Debolt leans heavily on *Vu v. McNeil-PPC, Inc.,* 2010 WL 2179882 (C.D. Cal. May 7, 2010). First, *Vu* does not prohibit the introduction of Dr. Shapiro's report. *Vu* was a product liability case involving Tylenol sold at Costco which allegedly led to the death of a 4-month old child. *Id.* at *1. The *Vu* Defendant offered rebuttal experts offering an alternative theory that the child in *Vu* died of causes other than a Tylenol overdose. *Id.* at *2. The *Vu* court argued that these alternative theories of cause of death "go beyond the

13

boundaries of Dr. Kelly's report."[2]  This case is plainly distinguishable.  Here, Dr. Shapiro meets Dr. Jaffe's conclusions head on and denies them.  The case is not comparable to *Vu* in the manner that there could be an alternative explanation for an event—rather, the core opinion of both experts relates to the existence of a psychological risk.  Dr. Jaffe says it exists. Dr. Shapiro says it does not.  The alternative cause of death theory offered in *Vu* is perhaps more akin to an affirmative defense, for which a party would be understood to bear the burden on an initial report.

Second, applying *Vu* in the manner sought by Debolt has been heavily criticized.  In *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, 2016 WL 1597529, at *7 (D. Colo. Apr. 21, 2016), the court found *Vu* to have

---

[2] The *Vu* court permitted rebuttal testimony that "undercuts Dr. Kelly's theory on the risks associated with administering cold and cough medicine to children and the toxicity of the active ingredients of Children's Tylenol as the cause of Connor's death" so long as it didn't propose an alternative.  *Vu* at 3.

applied an "unreasonably constrained interpretation of 'same subject matter' which led to questionable results." The *Spring Creek* court foresaw that decisions like *Vu* could be read, as Debolt does here, to "lead to otherwise affirmative disclosures being rendered impervious to collateral attack." *Id.* at *7.

Debolt uses ellipses to omit the following from the quote from *IBM*: "In this respect, a party can control the scope of the testimony of its adversary's rebuttal experts by limiting its own experts' testimony to a given subject matter." The corollary to this, though, is that any subject matter addressed by an initial report is fair game on rebuttal. And as *TCL* makes clear, the fairness of such rebuttal is not diminished if the rebutting witness begins work before receiving the initial report or uses alternative methods. Petitioner had no idea what opinions Jaffe would offer. If anything, he was expected to offer an opinion in support of

Debolt's arguments that T.J.D. is sufficiently mature to determine whether to return to Hong Kong or not. Debolt, for strategic reasons known only to himself and his counsel, chose not to put forward Dr. Jaffe's opinions on this point. In turn, Dr. Shapiro offered no opinion on this point as it would have been improper rebuttal.

Debolt admits at ¶5 of his motion that Petitioner made clear her intentions to offer Dr. Shapiro only in rebuttal long before all relevant deadlines. These communications occurred prior to the originally set initial expert deadline of Jan. 6, 2021. Debolt and his counsel also knew all along that due to the schedule of this case, Petitioner intended to facilitate meetings with Dr. Shapiro in January. Ex. A, Dec. 23, 2020 email from S. Vitek. If Debolt believed any of this process were improper, he could have raised an objection at that time rather than sandbagging in hopes of eliminating Dr. Shapiro's opinions from the case.

Debolt also argues that preliminary reports should not be followed by supplemental reports with "no finality to expert reports." Motion ¶10. Petitioner does not disagree—indeed, this premise for Petitioner's motion in limine #3. It does not follow, though, that all rebuttal reports are improper supplemental reports.

Debolt's motion seeks to bar Wan's expert from rebutting his expert because it would not be proper rebuttal. The argument is as illogical as it sounds and should be denied.

Respectfully submitted,

/s/Timothy Sendek                                    March 17, 2021
Timothy K. Sendek
Akerman LLP
71 S. Wacker Dr., 47th Floor
Chicago, Illinois 60606
Tel. 312-870-8007
tim.sendek@akerman.com

Jessica L. Sendek
Hensley Sendek Law LLC
124 S. County Farm Rd., Suite B1

Wheaton, IL 60187
630-358-9029
jessica@hensleysendeklaw.com

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I certify that on the date given below, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notice to all counsel of record in accordance with Fed. R. Civ. P. 5(b)(2)(E).

/s/Timothy K. Sendek

March 17, 2021