## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CHUNG CHUI WAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-3233 |
| | ) | |
| MICHEL DALE DEBOLT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Petitioner Chung Chui Wan seeks an award of attorneys' fees and costs reasonably incurred in the successful prosecution of her petition for the return of her children, T.D. and A.D., to Hong Kong. For the reasons that follow, the Court GRANTS Petitioner's petition for fees and costs in part. Respondent shall reimburse Petitioner $310,933.50 in attorneys' fees and $134,355.95 in costs. The request for a temporary restraining order is DENIED.

## I. BACKGROUND

The Court held a bench trial in this case on March 23 through 26 and April 6 through 9, 2021. Due to the COVID-19 pandemic,

the trial was conducted by video conference.  On May 3, 2021, the

Court entered an Opinion and Order (d/e 146) granting Petitioner's

petition for the return of the children under the Hague Convention

on the Civil Aspects of International Child Abduction (Hague

Convention), October 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S.

89, implemented by the International Child Abduction Remedies Act

(ICARA), 22 U.S.C. § 9001 et seq.  Petitioner now seeks payment of

$518,307 in attorneys' fees and $155,710.07 in costs.  Petitioner

also seeks a temporary restraining order limiting non-essential

spending of Respondent's assets.

Respondent Michel Dale Debolt objects.  Respondent asserts

Petitioner failed to establish the reasonableness of her attorneys'

hourly rates and hours billed.  He further argues his good faith and

economic circumstances warrant a reduction of the fees awarded.

Respondent also argues Petitioner failed to establish the

reasonableness, necessity, and compensable nature of her

requested costs.  Finally, Respondent objects to Petitioner's request

for a temporary restraining order.

## II. STANDARD FOR ATTORNEYS' FEES AND COSTS UNDER THE INTERNATIONAL CHILD ABDUCTION REMEDIES ACT

Section 9007 of ICARA provides for an award of attorneys' fees and costs when the court orders return of a child:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. ¶ 9007(b)(3).  The purpose of the award of fees and costs is to (1) restore the applicant to the financial position she would have been in had there been no retention or removal, and (2) to deter such retention or removal.  Hulsh v. Hulsh, No. 19 C 7298, 2021 WL 963770, at *2 (N.D. Ill. Mar. 15, 2021).

Under the statute, courts have the discretion to reduce or eliminate a respondent's obligation for attorneys' fees and costs where a full award would be "clearly inappropriate."  See Salazar v. Maimon, 750 F.3d 514, 519 (5th Cir. 2014) (ICARA imposes "a mandatory obligation" to award necessary expenses to a successful petitioner unless the respondent demonstrates an award would be

clearly inappropriate).  Courts have found an award "clearly

inappropriate" in certain circumstances, including when (1) the

respondent had a good-faith belief that his actions in removing or

retaining the child were legal or justified, and (2) the award would

impose such a financial hardship that it would significantly impair

the respondent's ability to care for the child.  Hulsh, 2021 WL

963770, at *5 (quoting Rath v. Marcoski, 898 F.3d 1306, 1311

(11th Cir. 2018)).

## III. ANALYSIS

Petitioner seeks attorneys' fees totaling $518,307.00 and

expenses totaling $155,710.07.

## A.    The Value of a Reasonable Fee Under the Lodestar Method is $414,578.

To determine the value of a reasonable attorney's fee, courts

use the "lodestar" method.  See Norinder v. Fuentes, 657 F.3d 526,

536 (7th Cir. 2011) (reviewing district court's use of the lodestar

method in a Hague Convention case).  The Court begins by

multiplying the hours the prevailing party's lawyers have

reasonably expended on the case by a reasonable hourly rate.  See,

e.g., Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014).  The

resulting lodestar figure is presumptively reasonable, but courts may nevertheless adjust the fee based on factors not included in the initial computation.  Id.; see also Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983) (listing factors).

Respondent challenges only the hourly rates of the attorneys and not the paralegals, assistants, and law clerks.  Respondent also challenges some of the hours billed.

### 1. The Reasonable Hourly Rate for Petitioner's Attorneys is $600/$650 for Joy Feinberg; $400 for Reuben Bernick; $250 for Shannon Luschen; and $425 for Attorneys Timothy Sendek and Jessica Hensley Sendek

Petitioner argues the hourly rates charged by her attorneys were reasonable.  The rates charged are as follows: Timothy Sendek, $605; Jessica Hensley Sendek, $475; Joy Feinberg, $650 in court/$600 out-of-court; Reuben Bernick, $400; and Shannon Luschen, $250.[1]  Petitioner asserts she has established her attorneys' rates are reasonable because she presented evidence that she paid her attorneys' fees in this matter and submitted evidence of the billing rates for other attorneys in the relevant community.

---

[1] Petitioner did not seek court hours for Bernick and Luschen, so the Court does not discuss their in-court rate.  See Chart (d/e 158).

Respondent argues Petitioner has failed to establish the reasonableness of her attorneys' hourly rates.  Respondent argues that, because Petitioner did not provide evidence her attorneys are regularly compensated at $605 and $475 per hour for representing clients in cases arising under the Hague Convention, the Court must evaluate Petitioner's motion on the prevailing rates in the Central District of Illinois, which Petitioner also failed to prove. Respondent contends the Court should set the rates at either $250 for all attorneys (based on the guardian ad litem rate) or reduce the rates across the board by 30% to $423.5, $332.5, $425, $280, and $175, consistent with Hulsh, 2021 WL 963770 at *4 (where the attorney only attached an affidavit stating the attorneys' fees were reasonable given the attorneys' experience, the court set the rate consistent with a fee awarded in a New York case).

The party seeking fees bears the burden of proving the reasonableness of the hourly rate charged.  Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 550 (7th Cir. 1999).  The reasonable hourly rate is based on the market rate for the attorney's work.  Gautreaux v. Chicago Housing Auth., 491 F.3d 649, 659 (7th Cir. 2007).  The market rate "is the rate that lawyers

of similar ability and experience in the community normally charge
their paying clients for the type of work in question." Uphoff v.
Elegant Bath, Ltd., 176 F.3d 399, 407 (7th Cir. 1999) (internal
quotation marks and citation omitted).  "The attorney's actual
billing rate for comparable work is presumptively appropriate to use
as the market rate." Id. (internal quotation marks and citation
omitted); see also Mostly Memories, Inc. v. For Your Ease Only, Inc.,
594 F. Supp. 2d 931, 934 (N.D. Ill. 2009) (an "attorney's actual
billing rate paid by his client is 'presumptively appropriate' to use
as the market rate").

If the court cannot determine the attorney's actual billing rate
(such as when the attorney has no fee-paying clients), the party
seeking fees must present "evidence of rates similarly experienced
attorneys in the community charge paying clients for similar work
and evidence of fee awards the attorney has received." Spegon, 175
F.3d at 555; Mathur v. Bd. of Tr. of S. Ill. Univ., 317 F.3d 738, 743
(7th Cir. 2003) (noting the court only looks to other evidence if an
attorney is unable to provide evidence of his or her actual billing
rates); People Who Care v. Rockford Bd. of Educ., Sch. Dist. No.
205, 90 F.3d 1307, 1310 (7th Cir. 1996).  The relevant community

does not necessarily mean the local market area.  In circumstances where the "subject matter of the litigation is one where the attorneys practicing it are highly specialized" the community may be the community of practitioners in the national market.  <u>Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs</u>, 553 F.3d 487, 490 (7th Cir. 2009).

Once the party seeking fees presents evidence establishing the market rate, the burden shifts to the opposing party to show why a lower rate should be awarded.  <u>Spegon</u>, 175 F.3d at 554-55.  If the party seeking fees does not meet his or her burden, the court may make its own determination of a reasonable rate.  <u>Pickett v. Sheridan Health Care Ctr.</u>, 664 F.3d 632, 640 (7th Cir. 2011).

### *Attorneys Feinberg, Bernick, and Luschen*

Petitioner was represented by attorneys Joy Feinberg, Reuben Bernick, and Shannon Luschen of the Feinberg Sharma PC firm (Chicago, Illinois) from August 2020 to December 2020.  Feinberg Decl. ¶ 1 (d/e 169).  Feinberg's Declaration identifies the hourly rates of the individuals who worked on the case.  <u>Id.</u> ¶ 5.  Feinberg's rate is $600 for office time and $650 for court time.  <u>Id.</u>  Bernick, a "seasoned lawyer with many years' experience" and who has

handled five Hague matters, has an hourly rate of $400 in office time and $425 for court time.  Id. (d/e 169).  Luschen, a second-year associate who has participated in a Hague case trial in the Northern District, has an hourly rate of $250 for office time and $300 an hour for court time.  Id.  The firm also used the services of a contract attorney, a former federal court clerk, at $300 an hour. Id. ¶ 5.

Feinberg indicates she has substantial experience handling family law and international child custody matters arising under the Hague Convention.  Id.  ¶ 6.  Feinberg has been licensed to practice law since 1977.  See d/e 170-2 at 2, ¶2.  She has tried four and resolved five other Hague matters.  Feinberg Decl. ¶ 5.  The Court recognizes the firm and its experience from another Hague Convention case filed in this Court.

Feinberg's Declaration also details various work and activities she has performed in the legal community, including, among other things, writing the chapter on Child Custody and other issues for the Illinois Institute of Continuing Legal Education; past president of the American Academy of Matrimonial Lawyers and the U.S. Chapter of the International Academy of Family Lawyers; admission

into the prestigious American College of Family Trial Lawyers; editor
on the Advocate Board of the Family Law Section of the American
Bar Association; winner of numerous prestigious awards and
accolades; Chair of the Family Law Section and Legal Education
Committees of the Illinois State Bar Association; work as an
attorney for minor children/child representative/guardian ad litem
in Cook County.  Id. ¶ 6.  Feinberg asserts her hourly rates are
charged in every case, except for pro bono work and guardian ad
litem work.  Id. ¶ 11.  She also notes that a recent decision in the
Northern District lowered her hourly rate but those rates were paid
in full by the client.  Id.  ¶ 11; see also Ex. B, Hulsh Case Billing
(d/e 170-2) (showing billing of $650/$600 by Feinberg, $400 by
Bernick, and $200 and $250 by Luschen in a Hague Convention
case).  Feinberg asserts Petitioner has paid fees in this case totaling
$49,400 and that a balance of $20,992.40 in attorneys' fees and
costs remains outstanding.  Feinberg Decl. ¶ 10.[2]

---

[2] The Court notes that the hour totals differ slightly between what Petitioner
seeks, as set forth in the Chart at docket entry 158, and what Feinberg
identifies in her Declaration.  The Court will use the hours identified by
Petitioner in the Chart.

Petitioner has presented evidence that the presumptive market rate is $600/$650 for Feinberg, $400 for Bernick, and $250 for Luschen.  Although Petitioner did not pay the bills to these attorneys in full, she presented evidence these attorneys received payment in full at these rates from a client in a recent, similar case (Hulsh v. Hulsh, Case No. 19-cv-7298, Northern District of Illinois, (d/e 170-2)).  The Court also notes these rates are in line with what Respondent's Chicago-area attorneys charged in this case for attorneys with similar years of experience.  See d/e 168; see Uphoff, 176 F.3d at 407 (an attorney's billing rate for comparable work is presumptively appropriate to use as the market rate); see also, e.g., Mostly Memories, 594 F. Supp. 2d at 934 (noting the rates were fully paid by the defendant and, therefore, were presumptively appropriate to use as the market rate and also noting the rates were in line with what other attorneys of similar experience were charging).

The hourly rate billed to paying clients is only a presumptive rate, from which a court may depart.  Gusman v. Unisys Corp., 986 F.2d 1146, 1151 (7th Cir. 1993) (noting that the court does not have to "leap directly from the willingness of some persons to pay

$X to Lawyer Y that $X is 'the' hourly rate of lawyer Y" although it is a starting point).  Respondent has not made any specific argument for why the Court should depart from the presumptive rate.  The Court finds no basis to depart from the presumptive rates for Feinberg, Bernick, and Luschen.  Those rates -- $600/$650, $400, and $250 -- are consistent with the level of experience shown in this case.  Moreover, as noted above, the rates are in line with what Respondent's attorneys, also primarily from the Chicago area, charged.[3]

### Timothy Sendek and Jessica Hensley Sendek

Timothy Sendek of Akerman LLP (Chicago, Illinois) and Jessica Hensley Sendek of Hensley Sendek Law (Wheaton, Illinois) represented Petitioner from December 2020 to the conclusion of the

---

[3] The Court is not holding that these rates are the prevailing rate in the Central District of Illinois.  The Court is simply following the direction of the Seventh Circuit that a court should generally defer to an out-of-town attorney's rate, although the court has the discretion to lower the rates if local attorneys could do as well and there was no other reason to have the services performed by an out-of-town attorney.  Mathur, 317 F.3d at 744.  Respondent does not argue that Petitioner should have hired Central District of Illinois attorneys, nor could he, as he primarily hired counsel from the Chicago area.  See, e.g., Gusman, 986 F.2d at 1151 ("And a party that hired pricey big-city lawyers to defend itself is in no position to contend that only small-town lawyers, at small town rates, were appropriate").

case.  Timothy Sendek indicates his hourly billing rate for all matters is $665 but he charged $605 in this case. T. Sendek Aff. ¶ 6 (d/e 165-2); T. Sendek Decl. ¶ 5 (d/e 170 at 1).  Timothy Sendek has practiced law for over 13 years.  T. Sendek Aff. ¶ 2.  He is a member of the Hague Convention Attorney Network organized by the U.S. State Department and the National Center for Missing and Exploited Children's International Child Abduction Attorney network.  Id. ¶ 5.  He asserts he has received multiple awards from the U.S. District Court for the Northern District of Illinois for his work on Hague convention matters.  Id. ¶4.  Timothy Sendek listed seven anonymous clients who paid hourly rates of between $605 and $665 for various matters over the last 12 months but he did not indicate whether any of the cases involved a Hague Convention matter.  T. Sendek Decl. ¶ 6.  His fees have been paid in full by Petitioner.  T. Sendek Decl. ¶ 3.

Jessica Hensley Sendek has been practicing family law exclusively for over 13 years.  J. Sendek Aff. ¶ 2 (d/e 165-1).  She is a member of the Hague Convention Attorney network organized by the U.S. State Department.  Id. ¶ 4.  Her standard billing rate for Hague Convention matters is $475 per hour.  Id. ¶ 5.  Jessica

Hensley Sendek states that, as a solo practitioner who started her own firm in January 2021, she is unable to provide invoiced and paid fees of similar matters.  J. Sendek Decl. ¶ 6 (d/e 170).  She asserts that her rate for this matter was set by her prior firm based on the nature of Hague Convention matters.  Id. ¶ 7.  She also asserts the rate is in line with what attorneys of similar experience levels charged in this case.  Id.  ¶ 8 (citing the $425 hourly rate of Respondent's attorneys with 11 to 15 years' experience (d/e 168) and the hourly rates listed in Feinberg Sharma's engagement letter showing $450 hourly rate for one of the attorneys (d/e 170-3 at 6)).  Petitioner paid all of Jessica Hensley Sendek's fees in this case.  Id. ¶ 4.

The Sendeks' evidence includes billing invoices in this case (Wan Costs and Fees Backup 87-146 (d/e 160-2)); a proposed but unaccepted engagement letter to Petitioner from a Wheaton, Illinois law firm showing hourly rates between $375 to $600 an hour for the attorneys (Wan Costs and Fees Backup 181-185 (d/e 160-3)); and Timothy Sendek's representation of his billing rates in other cases (T. Sendek Decl. ¶ 6).

The proposed engagement letter does not establish the market rate because the letter does not indicate the level of experience of the various attorneys.  The evidence that Timothy Sendek presented of billing rates in other cases (T. Sendek Decl. ¶ 6) does not establish his billing rate because he did not indicate what type of work was involved.  See Johnson v. GDF, Inc., 668 F.3d 927, 933 (7th Cir. 2012) (finding the attorney did not establish his actual billing rate where he did not show how much he was actually paid and for what kind of work).

However, as noted above, a party can demonstrate her attorneys' presumptive market rate by demonstrating she paid the requested rate.  Mostly Memories, 594 F. Supp. 2d at 934 (noting that rates fully paid by the defendant were presumptively appropriate to use as the market rate and also noting the rates were in line with what other attorneys of similar experience were charging); Consolidated Paving, Inc. v. County of Peoria, Ill., No. 10-cv-1045, 2013 WL 2431260, at *2 (C.D. Ill. June 4, 2013) (finding the plaintiff "adequately showed the presumptive market rate by demonstrating it had actually paid the requested rate").  Petitioner

paid the Sendeks' invoices in full, thereby establishing their presumptive market rate.  T. Sendek Decl. ¶ 3; J. Sendek Aff. ¶ 4.

The Court does not, however, have to accept this rate.  As noted above, the hourly rate billed to paying clients is only a presumptive rate.  <u>Gusman</u>, 986 F.2d at 1151.  If the court does depart, the court must have a reason other than ability to identify a different rate in the community.  <u>Id.</u>  For instance, "if the district court decides that the proffered rate overstates the value of an attorney's services, it may lower them accordingly."  <u>Mathur</u>, 317 F.3d at 743.  An attorney's experience or inexperience is also a basis on which a court may depart from the presumptive rate.  <u>People Who Care</u>, 90 F.3d at 1313.

Here, the Court finds the proffered rates of Timothy Sendek and Jessica Sendek overstate the value of their services in this Hague Convention case and are not consistent with their experience.  Although counsel prevailed in this matter, their skills were not those of an attorney whose services in a Hague Convention case would warrant $605 and $475 an hour.  <u>See</u> <u>Trs. of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.</u>, 570 F.3d 890, 905 (7th Cir. 2009) (stating "the reasonableness of an attorney's

billing rate depends on the experience and qualifications of the professional.").  Counsel did not display the excellence or achieve the time savings implied by their higher rate.  <u>See, e.g.</u>, <u>Gusman</u>, 986 F.2d at 1151 (noting a judge can depart from the presumptive rate where the lawyers "did not display the excellence, or achieve the time savings, implied by their higher rates.").

Specifically, the Sendeks tended to go over the same information repeatedly and belabored every point.  They did not show the knowledge of the Hague Convention expected of someone charging the rates charged.  They were not well organized.  By way of example, they submitted exhibits at trial with exhibit numbers that had already been used and submitted the wrong description of exhibits on the exhibit list, resulting in confusion and additional work for court staff.  The trial, which was conducted by video, was constantly interrupted due to connectivity issues with the Sendeks' equipment, despite Petitioner spending $2,850 for remote court proceeding assistance.  <u>See</u> Chart (d/e 159-1 at 5); ADC Tech Services LLC Invoice (d/e 165-3 at 24).  The attorneys' fees and costs briefing was unacceptable and required the Court to request

additional information and painstakingly review the invoices and compare them to the requests.

On this record, and given the level of experience of these two attorneys, the Court sets their hourly rate at $425 an hour, which is consistent with the hourly rates of similarly experienced attorneys. <u>See</u> d/e 168 (listing the years of experience and rates of Respondent's attorneys in this case, with attorneys with 11 to 15 years' experience receiving $425 an hour)).

### 2. **<u>The Reasonable Number of Hours Expended in This Case Totals 1066.1 Hours</u>**

Petitioner asserts her attorneys expended the following number of hours in this case: Timothy Sendek, 505.7; Jessica Hensley Sendek, 254.7; Feinberg, 2.5 court time, 54.8 office time; Bernick, 27.5 office time; Luschen, 65.35 office time. <u>See</u> Chart (d/e 158). She asserts the paralegals expended 152.58 hours and the trial exhibit preparation staff expended .7 hours. <u>Id.</u>

The party seeking to recover attorneys' fees bears the burden of proving the reasonableness of the number of hours billed. <u>Spegon</u>, 175 F.3d at 550. Whether the time spent by an attorney on behalf of a client is reasonable depends on the total number of

hours involved and the particular tasks performed.  See Trs. of
Chicago Plastering Inst. Pension Trust, 570 F.3d at 905.  "Hours
spent are not reasonably expended if they are excessive, redundant,
or otherwise unnecessary."  Stark v. PPM America, Inc., 354 F.3d
666, 674 (7th Cir. 2004).

Petitioner supported the hours worked with invoices detailing
the work performed and the hours expended.  See Invoices (d/e
160-2 at 1-94).  Respondent argues Petitioner has failed to provide
the Court with sufficient evidence to establish the reasonableness of
the hours billed.  Specifically, Respondent argues Petitioner should
not be compensated for her unreasonable refusal to stipulate to her
case-in-chief and her unsuccessful litigiousness.

Respondent first argues Petitioner should not be compensated
for her unreasonable refusal to stipulate to her case-in-chief.
Respondent argues this refusal led to two full days of trial wherein
Petitioner essentially put on a custody case.  Respondent asserts
Petitioner's fees should be reduced by $26,803 (48.6 hours) for the
two days of trial, during which Petitioner's attorneys "essentially
put on a custody case[.]" Resp. Br. at 32 (d/e 161).

Petitioner claims Respondent's last-minute attempt to stipulate to her case-in-chief was a strategic move by Respondent to further minimize Petitioner's ability to argue for the return of her children and make himself and his defenses the "star of the show." Pet. Reply at 16 (d/e 165).  Petitioner asserts this maneuver came after months of Respondent claiming Petitioner agreed to move to the U.S. and that the abduction was not wrongful.  Petitioner also argues the refusal to stipulate did not prolong the trial but only affected the order of the testifying witnesses.

The Court finds Petitioner was not unreasonable in declining to stipulate to her case-in-chief shortly before trial.  Petitioner was entitled to put her case on first, particularly where Respondent did not agree to stipulate until immediately before trial.  See Trial Brief at 7 (d/e 95) (March 16, 2021) (stipulating to Petitioner's case-in-chief); Pretrial Order at 3 (d/e 106) (March 18, 2021) (noting Respondent stipulated to Petitioner's case-in-chief but Petitioner did not accept the stipulation).  Furthermore, the evidence presented during the first two days of trial would have been presented regardless of the order of the testimony, as much of the evidence was relevant to Respondent's affirmative defense that the children

faced a grave risk of harm if returned to Hong Kong due to Petitioner's alleged physical and emotional abuse of them.  See Answer, First Aff. Def., ¶4(e) (d/e 27); Opinion at 32-34 (d/e 146) (finding the evidence did not support Respondent's argument that the children face a grave risk of harm if returned to Hong Kong due to Petitioner's alleged physical and emotional abuse of the children).

Respondent also objects that Petitioner should not be compensated for her unsuccessful litigiousness.  Respondent points to the following examples: Petitioner's objection to Respondent's request to extend the expert report deadline to permit Dr. Jaffe to meet with the minor children and her unsuccessful appeal of the Magistrate Judge's allowance of that request; filing an untimely motion to compel Respondent's compliance with improper discovery requests and unsuccessfully appealing the denial of that motion (related to Petitioner's request for production of recordings by Respondent); and seeking to depose Respondent's non-testifying consulting expert witness and challenging his designation as such. Respondent asserts Petitioner's fees should be reduced by $25,716.08 (43.38 hours) for the time spent on these matters.

Petitioner responds that, when Respondent requested to extend deadlines to permit Dr. Jaffe to meet with the minor children (due to the children being with Petitioner for visitation), she offered for Dr. Jaffe to meet with the children while they were with her. She notes the meeting between Dr. Jaffe and the children ultimately occurred remotely over Zoom, and Dr. Jaffe never explained why he could not conduct the meetings with the children over Zoom while they were with Petitioner or why the meetings could not have been scheduled earlier. As for the motion to compel, Petitioner asserts that Respondent was ultimately ordered to produce the recordings (see d/e 114), and the recordings were related to the ultimate return of the children.  Finally, Petitioner asserts it is bold of Respondent to claim it was unreasonable for Petitioner to oppose relief sought by Respondent for which the Court found Respondent had failed to establish good cause.  (The Court notes, however, that the Magistrate Judge ultimately granted Respondent the relief sought.  See Opinion at 3 (d/e 72) (finding Respondent failed to show good cause to amend the scheduling order and that wanting to find a better expert was not a substantial basis to change experts but nonetheless amending the scheduling order and finding the

timely disclosure of the new expert's report rendered the late

disclosure harmless)).

The Court will not deny compensation to Petitioner's attorneys

for time spent on the unsuccessful motions in this case. "A court's

focus should not be limited to the success/failure of each of the

attorney's actions.  Rather, it should be upon whether those actions

were reasonable." People Who Care, 90 F.3d at 1314; see also

Uniroyal Goodrich Tire Co. v. Mut. Trading Corp., 63 F.3d 516, 526

(7th Cir. 1995) (noting that if the court were "to deem unreasonable

the reimbursement of fees incurred" for colorable but unsuccessful

motions, the court "would be discouraging the type of

representation attorneys are duty-bound to provide").  The Court

finds Petitioner's attorneys' actions reasonable in each of these

situations.

The Court will, however, deduct hours spent on matters

unrelated to this litigation, including time spent on matters related

to the Hong Kong proceeding and the Illinois state divorce

proceedings.  See Distler v. Distler, 26 F. Supp. 2d 723, 728 (D.

N.J. 1998) (cutting by one-third the fees of an attorney in a Hague

Convention case who also performed work related to the custody

case in Israel because those fees were not necessary to the Hague case); <u>Lebiedzinski v. Crane</u>, No. A03-0248 CV(JKS), 2005 WL 906368, at *3 (D. Alaska Apr. 13, 2005) (finding the petitioner was not entitled to "expenses associated with the factually related criminal and custodial proceedings").  The Court deducts the following hours:

- Attorney Joy Feinberg: 1.1 hours (9/1/2020) (working with client to secure an attorney for her Illinois divorce case)[4]; .5 hours (9/10/20) (referencing divorce case and asking state counsel to sign and file).  <u>See</u> Wan Costs and Fees Backup 149, 152 (d/e 160-2 at 63, 66).

- Attorney Reuben Bernick: .75 hours (11/16/20) (work on motion for relief from stay).  <u>See</u> Wan Costs and Fees Backup 170 (d/e 160-2 at 84).

- Attorney Shannon Luschen: .3 hours (8/31/2020) (reviewed husband's motion for temporary and sole allocation of parental responsibilities and to set parenting time); .2 (8/31/2020)

---

[4] The time entry lists several different tasks.  Because the Court cannot determine how much time was spent on the task of securing an attorney for the state divorce case, the Court will deduct the entire time entry.

(billing description includes "intro with divorce attorney in Hong Kong"); .1 hours (9/3/2020) (reviewing emails re: entering appearance in state court); .2 hours (9/4/2020) (reviewing emails from Hong Kong counsel and amended petition for divorce in Hong Kong).  <u>See</u> Wan Costs and Fees Backup 147, 150 (d/e 160-2 at 61, 64).

- ● Attorney Jessica Hensley Sendek: .16667 hours (12/18/2020) (review and respond to email regarding state divorce case); .25 hours (12/19/2020) (review and respond to emails regarding jurisdiction, divorce case, and Hong Kong case); .33333 hours (12/30/2020) (telephone conference with state case attorney regarding the divorce case); .66667 (12/30/20) (review file for state case and email attorney in the state case); .1 hours (1/5/21) (review and respond to client's mail re: process server in Hong Kong case); .66667 (1/11/21) (zoom conference with Hong Kong attorneys re: case status in U.S. and Hong Kong and work to be done); .25 (1/13/21) (telephone conference with process server re: affidavit of service for Hong Kong court; email to Hong Kong attorney; mail to state case attorney for the state court file).  <u>See</u> Wan Costs and Fees Backup 119, 122, 123, 125, 126 (d/e 160-2 at 33, 36, 37, 39, 40).

- Paralegal Theresa Cook: .5 hours (8/31/2020) (review pleadings in "District of Hong Kong" and create pleading index of all filings in the Hong Kong matter); .2 hours (9/23/20) (discussion with process server regarding service of Hong Kong divorce pleadings); .2 hours (9/24/20) (review email from client regarding Hong Kong petition; email to client regarding providing the Hong Kong petition and other documents to the process server); .2 hours (9/29/20) (email regarding service of Hong Kong petition on Respondent); .3 hours (9/30/20) (emails and telephone discussions regarding Hong Kong petition).  See Wan Costs and Fees Backup 148, 153-155 (d/e 160-2 at 62, 67-69).

The Court also notes that Petitioner inadvertently included $2,700 in fees from a contract attorney as expenses.  See d/e 159-1 at 1; 160-2 at 78; Feinberg Decl. ¶ 9, n.1.  Respondent did not object to this expense when it was included in the Bill of Costs. Therefore, the Court will add that amount to the attorneys' fees and deduct it from the costs.

Given the rates identified by the Court and reducing the hours as set forth above, the lodestar amount of fees is $414,578.

| Name | Rate | Hours | Total |
|---|---|---|---|
| Timothy Sendek<br>Attorney | $425 | 505.7 | $214,922.25 |
| Jessica Hensley Sendek<br>Attorney | $425 | 252.27 | $107,214.75 |
| Joy M. Feinberg<br>Attorney | $650<br>$600 | 2.5<br>53.2 | $1,625<br>$31,920 |
| Reuben A. Bernick<br>Attorney | $400 | 26.75 | $10,700 |
| Shannon M. Luschen<br>Attorney | $250 | 64.55 | $16,137.50 |
| Contract attorney | $300 | 9 | $2,700 |
| LaToya Ellerson<br>Paralegal | $200 | 133.6 | $26,720 |
| Law Clerk[5] | $200 | 3.78 | $756 |
| Theresa Cook<br>Paralegal | $125 | 13.8 | $1,725 |
| Ackerman trial exhibit<br>staff | $225 | .7 | $157.50 |
| **TOTAL** | | | **$414,578** |

### 3.   No Adjustment to the Lodestar Is Necessary

Having determined the lodestar, this Court may adjust the fees

upward or downward based on the following factors:

> (1) the time and labor required; (2) the novelty and
> difficulty of the questions; (3) the skill requisite to
> perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the
> case; (5) the customary fee; (6) whether the fee is fixed or
> contingent; (7) the time limitations imposed by the client
> or the circumstances; (8) the amount involved and the

---

[5] Petitioner's exhibit identifies this individual as a paralegal but the hourly rate charged was $200, which was identified as the hourly rate for law clerks.  See Chart (d/e 158), Feinberg Decl. ¶ 5 (d/e 169).

results obtained; (9) the experience, reputation, and ability of the attorneys; (1) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Hensley, 461 U.S. at 430 n.3.

Petitioner argues the factors favor an upward adjustment because the time and labor required in the case was substantial, the questions in the case were novel and difficult, and the skill required to respond to Respondent's allegations was substantial. Petitioner also argues an upward adjustment is necessary given the amount involved and the result obtained. Finally, Petitioner argues the fundamental equities of the case weigh against any lodestar reduction.

The Court finds no upward adjustment based on the lodestar factors is warranted. The time and labor required in the case, as well as the novelty and complexity of the issues, are fully reflected in the number of billable hours recorded by counsel. See Blum v. Stenson, 465 U.S. 886, 898 (1984) (finding no upward adjustment warranted where the novelty and complexity of the case were reflected in the billable hours recorded); see also Berendsen v. Nichols, 938 F. Supp. 737, 739 (D. Kan. 1996) (refusing to make an

upward adjustment to the lodestar, noting ICARA cases were not unprecedented for petitioner's counsel, the law did not appear to be complex, and the case was short-lived).  While an upward adjustment might be necessary where the skill of counsel required fewer hours than might normally be billed in a case, that is not the case here.  See Blum, 465 U.S. at 898-99.  Finally, while Petitioner's attorneys were successful, their success is reflected in the hours reasonably expended in the litigation, and this is not a case of exceptional success.  See Hensley, 461 U.S. at 435 (noting that "in some cases of exceptional success an enhanced award may be justified").  Petitioner has not demonstrated that an enhancement is necessary to provide fair and reasonable compensation, and she is not entitled to an upward adjustment.

**B.    Petitioner Has Demonstrated Reasonable Costs and Expenses Totaling $134,355.95.**

Petitioner seeks costs and expenses totaling $155,710.07 pursuant to 28 U.S.C. § 1920 and 22 U.S.C. § 9007(b)(3).  Section 1920 provides that a judge or clerk may tax as costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  Section 9007 of ICARA also requires the court

order the respondent to

pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3).

Respondent objects to some of Petitioner's requests for costs

and expenses.

### 1.   <u>Petitioner is Entitled to Costs of Depositions, Real Time Transcripts, and Court Transcripts</u>

Respondent objects that Petitioner failed to substantiate her

costs associated with the depositions of Respondent, Petitioner, Dr.

Jaffe, and Dr. Chan, as well as real time trial transcripts and

transcripts of other hearings.  However, in her Reply, Respondent

provides invoices identifying the costs relating to the depositions

and court transcripts.  Therefore, this objection is overruled.

Respondent also appears to argue the costs are unreasonable

and unnecessary.  Specifically, Respondent argues that, to the

extent Petitioner seeks to tax him for the cost of obtaining copies of

videotaped depositions, said cost is not compensable.

The Court finds the deposition and video deposition charges in

this case were necessary and reasonable given the uncertainties

caused by the COVID-19 pandemic.  See Little v. Mitsubishi Motors

North Am., Inc. 514 F.3d 699, 702 (7th Cir. 2008) (noting § 1920

authorizes costs for video recording and stenographic transcription

of a deposition so long as the transcript was necessarily obtained

for use in the case and the cost is reasonable).

The Court also finds the court transcripts were necessarily

obtained for use in the case, and Petitioner is entitled to those

costs.  The real time transcripts were necessary—and not simply a

convenience—given the complexity of the case and the fact that the

trial was non-continuous, taking place from March 23 through

March 26 and then from April 6 through April 9 and occurred via

videoconference.  In addition, witnesses testified out of order and
some witnesses had their testimony interrupted to accommodate
other witnesses.  See Majeske v. City of Chicago, 218 F.3d 816, 825
(7th Cir. 2000) (affirming award of costs for daily trial transcripts
and other court transcripts under § 1920 where the record showed
the defendant used transcripts to prepare direct examinations
questions, anticipate cross-examination questions, to cross-
examine plaintiffs' witness, draft post-trial briefs, and respond to
plaintiff's post-trial motions and the defendant actually used the
transcripts for the case); but see United States v. Pieper, 854 F.2d
1020, 1028 (7th Cir. 1988) (reversing award of daily transcript
costs, finding the transcripts were obtained for the convenience of
the attorney where the district court found the transcripts were
needed for cross-examination and closing argument).

Petitioner also seeks costs for the transcript of the October 23,
2020 hearing on the motion to dismiss.  See d/e 159-1 at 1.  The
Court finds this cost was necessary because the hearing occurred
before the Sendeks entered their appearance and was necessary to
their understanding of the case, especially where Respondent raised

the issue again at the bench trial.  <u>See</u> Opinion and Order at 2 (d/e
146).

The Court notes, however, that the invoice provided in support
pertains to a hearing in a criminal case that occurred on the same
date and does not pertain to this case.  <u>See</u> d/e  165-2 at 2 (invoice
for $127.75).  The Court contacted the Court Reporter, who
indicated she may have originally sent the wrong bill but ultimately
sent Petitioner's attorney the correct bill ($337.90) and Petitioner's
attorney paid it.  Therefore, the Court will allow the $127.75 charge
for this transcript, based on what Petitioner has requested.

**2.** **<u>Petitioner is Entitled to Costs for Airfare and
Accommodations for Visiting the Children But Not for
Waiting for Trial, Waiting to Visit the Children, or
Waiting for the Trial Result</u>**

Respondent objects to Petitioner's request for airfare costs and
accommodations associated with waiting for trial, waiting for the
trial result, and visiting the children.

The Court finds no basis for Petitioner's request for airfare and
accommodations associated with waiting for trial, waiting to visit
the children, and waiting for the trial result.  Petitioner does not
provide any argument or legal support to suggest such costs were

necessary as opposed to a convenience to Petitioner. Therefore, the Court will not award Petitioner her costs for her January 13, 2021 ($817.65) and February 22, 2021 ($672.65) flights from Chicago to the Bahamas (d/e 159-1 at 4) and accommodation costs for January 13 to February 11, 2021 ($3,000), February 22 to March 18, 2021 ($3,000), and April 19 to May 4, 2021 ($2,571.43) (d/e 159-1 at 4-5).  The flight on May 4, 2021 from Chicago to Mexico, to which Respondent objects, is allowed because it was the first leg in her flight to Hong Kong with the children after their return to Petitioner.  See Freier v. Freier, 985 F. Supp. 710, 714 (E.D. Mich. 1997) (awarding transportation costs for returning the child to Israel).  None of Petitioner's other flights between Chicago and Hong Kong were nonstop flights, and the price of the Chicago to Mexico and Mexico to Hong Kong flights was reasonable and consistent with Petitioner's other flights between Chicago and Hong Kong.  See (159-1 at 4); Wan Costs and Fees Backup 4-9, 10-14, 33-37, 38-46. Petitioner is also entitled to the costs incurred for attending the trial, even though the trial was by video, so that she could confer with her attorneys.  See, e.g., Distler, 26 F. Supp. 2d at 729 (finding it necessary for the petitioner to fly to the United States to attend a

court-ordered hearing); <u>Guaragno v. Guaragno</u>, No. 7:09-CV-00187-O, 2010 WL 5564628, at *5 (N.D.Tex. Oct. 19, 2010), <u>report and recommendation accepted</u>, 2011 WL 108946 (N.D. Tex. Jan. 11, 2011) (allowing travel expenses of the petitioner for trial and for relocation of the child).

As for the airfare and accommodations associated with visiting the children, the Court notes that courts have taken different approaches on this issue.  <u>Compare</u> <u>Aldinger v. Segler</u>, 157 F. App'x 317, 318 (1st Cir. 2005) (costs incurred for visiting the children while they were wrongfully retained in the United States were not recoverable because the visits were not necessary to enable the father to obtain return of the children) <u>with</u> <u>Nissim v. Kirsh</u>, No. 1:18-cv-11520 (ALC), 2020 WL 3496988, at *5 (S.D.N.Y. June 29, 2020) (costs of travel associated with the visitation schedule were necessary expenses).  This Court concludes that such expenses are recoverable in this case pursuant to § 9007(b)(3).  Awarding costs associated with Petitioner's visits with the children is in line with ICARA's purpose to "restore the applicant to the financial position he or she would have been in had there been no removal or

retention." Hague Convention, 51 Fed. Reg. 10494-501, 10511;

<u>Nissim</u>, 2020 WL 3496988, at *5.

**3.** **<u>Petitioner is Entitled to Recover the Expert Witness
Fees for Dr. Shapiro and Mr. Marwah but Not For
Professor Kapai</u>**

Petitioner seeks expert witness fees of $28,000 for Dr. Robert

Shapiro, $24,367.09 for Aziz Marwah, and $8,111.85 for Professor

Puja Kapai.  Respondent objects, arguing (1) witness fees are

limited to $40 per day plus subsistence for a witness's attendance

at court or a deposition; (2) Dr. Shapiro's fees are unreasonable

because he increased his hourly rate in this matter from $300 to

$400 per hour; and (3) the fees for the consulting expert, Professor

Kapai, are not compensable in the absence of any indication that

the fees were necessary to effectuate the return of the children.

Respondent first argues that expert fees are not recoverable

under Rule 54(d) and § 1920 to the extent they exceed the $40-per-

day cap set forth in 28 U.S.C. § 1821(b) (providing for an

attendance fee of $40 per day for each day's attendance in at a

deposition or court).  Respondent requests that, to the extent

Petitioner's request for costs exceeds this amount, it should be

denied.  Resp. Br. at 42 (d/e 161) (citing Hulsh, 2021 WL 963770, at * 8).

Petitioner seeks costs and expenses under both § 1920 and § 9007(b)(3).   As such, the case cited by Respondent is distinguishable because the court only considered the expert fee request under § 1920.  See Hulsh, 2021 WL 963770, at * 5, 8 (noting the petitioner requested expert fees under Rule 54 and § 1920).  Section 1920 does not define the scope of necessary expenses a petitioner may recover under ICARA.  Carrasco v. Carrillo-Castro, No. 1:12-CV-268 MV/WDS, 2012 WL 13076563, at *3 (D.N.M. Aug. 1, 2012) (noting ICARA allows costs not available under § 1920).  Section 9007(b)(3) allows recovery of "necessary expenses incurred by or on behalf of the petitioner."  22 U.S.C. § 9007(b)(3).  This can include expert witness fees.  See, e.g., Kulapala v. Delgoda, No. 3:15-cv-01890-BR, 2016 WL 1618285, at *2 (D. Or. April 21, 2016) (awarding under § 9007 expert witness fees incurred in a Hague Convention case).  Therefore, the expert fees are recoverable if the expenses were necessary and reasonable.

The expenses for Dr. Shapiro and Mr. Marwah were necessarily incurred by Petitioner to rebut Respondent's affirmative

defense that the children were at grave risk of physical or
psychological harm if they were returned to Hong Kong.  Dr.
Shapiro, a forensic psychologist, testified as a rebuttal witness at
trial and gave his opinion that the children were not at grave risk.
Mr. Marwah, an expert on Hong Kong, testified as a rebuttal
witness at trial.  Mr. Marwah gave his opinion that the Basic Law is
still intact in Hong Kong and the people of Hong Kong enjoyed
freedom and their human rights.  He did not believe the children
were at grave risk if returned to Hong Kong.  The Court found Dr.
Shapiro and Mr. Marwah credible and gave more weight to their
opinions that the opinions of Respondent's experts.  <u>See</u> Opinion
and Order at 23 (d/e 146).

The Court does not, however, have enough information about
Petitioner's consulting expert, Professor Kapai, to determine
whether her services were necessary to the litigation.  Petitioner
submitted an invoice showing that Kapai is an Associate Professor
at the University of Hong Kong.  The invoice shows Professor Kapai
reviewed documents, the testimony of Mr. Marwah and Dr. Phil
C.W. Chan (Respondent's expert), and consulted and attended Dr.
Chan's deposition.  <u>See</u> Invoice (d/e 160-1 at 3).  However, despite

having the opportunity to provide further information in her Reply, Petitioner has not explained the necessity of Professor Kapai's services.  Because the Court cannot determine whether Professor Kapai's services were necessary, the Court will not award Petitioner fees for the services of Professor Kapai.

Respondent next argues Dr. Shapiro's fee is unreasonable because he inexplicably increased his hourly rate in this matter from $300 to $400.  Respondent asserts that, while Dr. Shapiro did not produce an engagement agreement in this matter, in virtually every case in which he has appeared as an expert with the Respondent's attorneys' firm, his rates have been $300 per hour for office time and $350 per hour for court and depositions. Respondent attaches: (1) Dr. Shapiro's testimony at a deposition in a marriage dissolution case on June 19, 2019 identifying his hourly rate as $300 (d/e 161-2 at 2-3 ); and (2) August 9, 2018  and March 16, 2020 fee agreements identifying Dr. Shapiro's rate for a court-ordered evaluation of the minor children at $300 an hour for time spent on the file/case and $350 per hour for trial or deposition (d/e 161-2 at 4-10).  Respondent also points out that those engagement agreements provide that custody evaluations generally cost between

$10,850 and $12,000, with additional $4,000 retainers required for both deposition and trial.

In this case, Dr. Shapiro's invoice shows he charged $400 an hour, resulting in a total fee of $31,200.  Dr. Shapiro discounted the fee by $3,200, resulting in a final charge of $28,000. See Invoice (d/e 160-1 at 1).

That Dr. Shapiro charged $300 to $350 an hour in other cases does not convince the Court that Dr. Shapiro's rate in this case was unreasonable.  The fees generally charged by the expert on related matters is only one of many factors a court considers when determining the reasonableness of an expert's fee. See, e.g., Abrams v. Van Kampen Funds, Inc., No. 01 C 7538, 2006 WL 452419, at *3 (N.D. Ill. Feb. 21, 2006) (noting factors to determine a reasonable rate for an expert include the expert's area of expertise, prevailing rates of other respected available experts, the nature, quality, and complexity of the work performed, the fee actually charged by the expert on related matters; the cost of living in the pertinent geographic area, and any other factor likely to assist the court).

Given the circumstances of the case, which involved an expedited Hague Convention case occurring during a pandemic, the Court finds the $400-an-hour charge reasonable.

The Court previously found the rates charged by Respondent's experts had little relevance given the nature of Respondent's objection to Dr. Shapiro's fee (that Dr. Shapiro did not charge his usual rate of $300/$350). Order at 6 (d/e 167). Nonetheless, the Court notes that Respondent's experts charged even greater amounts than charged by Petitioner's experts. Dr. Chan testified he was paid $85,000 for his services in this case. Dr. Jaffe testified he had been paid over $60,000. Further, at his deposition, Dr. Jaffe testified he was paid $475 per hour. Trial Ex. PX76 at 158 (the deposition transcript was admitted into evidence on April 9, 2021). This further supports a finding that the $400 an hour charge was reasonable.

**4.** **Petitioner is Entitled to Recover Costs Incurred in Subpoenaing Respondent's Consulting Expert, those Federal Express Fees that are Supported by Invoice, and Certain Courier/Messenger Services**

Finally, Respondent argues Petitioner's counsels' ordinary business expenses are not compensable. Respondent objects to: (1)

costs for subpoenas to Respondent's consulting expert; (2) Federal Express charges; and (3) messenger/courier services. Respondent also asserts Petitioner failed to provide any support for these charges, other than her attorneys' billing statements.

In her Reply, Petitioner provides invoices in support of most of the charges. Therefore, Respondent's objection on the ground that she did not support the charges is overruled as to those charges she supported.

Respondent challenges the costs for subpoenas to Respondent's consulting expert, Professor David Shambaugh. Petitioner seeks $135 for service on and witness fee for Professor Shambaugh on January 15, 2021.  See 159-1 at 2; d/e 165-3 at 13. Some background is necessary to put the costs in context.

On December 8, 2020, Respondent identified Professor Shambaugh as an expert who would testify at trial.  Professor Shambaugh did not issue a report.  On January 6, 2021, Respondent sent Petitioner notice he was substituting Dr. Chan and disclosed Dr. Chan's expert report at the same time.  Petitioner objected to the substitution.

On January 8, Petitioner issued two subpoenas—one to
Professor Shambaugh and one to George Washington University—
seeking correspondence between Professor Shambaugh and
Respondent.  On January 13, 2021, Respondent moved to quash
the subpoenas (d/e 61)  On January 14, 2021, Respondent sought
leave to substitute Dr. Chan for Professor Shambaugh.  On January
15, 2021, Respondent issued amended subpoenas seeking
additional information and seeking Professor Shambaugh's
deposition.

On February 1, 2021, the Magistrate Judge granted the
motion for leave to substitute, finding the late identification of Dr.
Chan was harmless because his report was disclosed on time. The
Magistrate Judge also granted the motion to quash (d/e 72), finding
Respondent was entitled to change Professor Shambaugh from a
testifying expert to a non-testifying consultant and that Petitioner
failed to show exceptional circumstances warranted deposing
Professor Shambaugh.  Opinion at 6-7 (d/e 72).

In light of this procedural history, the Court finds that costs
incurred in serving Professor Shambaugh were necessarily
incurred.  At the time Petitioner issued the subpoenas, Petitioner

objected to substitution of Respondent's expert and expressed
concern whether Professor Shambaugh were truly a consulting
witness as opposed to a testifying one.  See Pet. Opp. at 3 n.3 (d/e
70).  Although Petitioner was ultimately not allowed to depose
Professor Shambaugh or obtain documents from him, a bona fide
dispute existed at the time that justified issuing the subpoenas.
Therefore, the Court will allow the costs as necessarily incurred.

Respondent next objects to the Federal Express charges,
asserting such costs are not taxable.  However, the Seventh Circuit
has construed § 1920 to include Federal Express charges.  See
Tchemkou v. Mukasey, 517 F.3d 506, 512-13 (7th Cir. 2008)
(rejecting argument that the petitioner could not recover costs for
computerized research, courier service, Federal Express deliveries,
long distance phone calls, postage, printing charges, and research
fees).  The Court has reviewed the Federal Express charges and
found the majority of them are supported by invoices.  The Court
was unable to find invoices for three Federal Express charges: $86,
$11.19, and $11.19 (Chart, d/e 159-1 at 3-4).  Consequently, the
Court will not tax those three charges as costs.

Respondent last argues Petitioner is not entitled to recover courier/messenger services hired by counsel.  As noted above, the Seventh Circuit has construed § 1920 to include courier and delivery services.  Tchemkou, 517 F.3d at 512-13.

The documentation shows Petitioner used courier/messenger services to deliver service of summons and subpoenas (d/e 159-1 at 1-2; 165-3 at 2-3); courier services for return of passports to Petitioner (d/e 159-1 at 4; d/e 165-3 at 18); and delivery of trial exhibits to the Court (d/e 159-1 at 3; d/e 165-3 at 11).  The Court finds these expenses were necessary expenses under § 1920 under § 9007(3).  See Fidlar Techs. V. LPS Real Estate Data Solutions, Inc., No. 4:13-cv-4021-SLD-JEH, 2016 WL 4706927, at *2 (C.D. Ill. Sept. 8, 2016) (finding courier and messenger service fees compensable under § 1920 and noting the plaintiff did nothing to suggest why the costs were not for services necessarily obtained for use in the case).

However, several courier/delivery charges are not supported by invoice or the necessity of the charge is not apparent and Petitioner failed to explain how the cost is necessary.  The Court will not allow the following charges:

- $55.13 charge for delivery of a passport to Petitioner (d/e 159-1 at 2). The Court could find no invoice in support of this charge.

- $175.78 charge identified as a charge for delivery of exhibits to the Court (d/e 159-1 at 3). However, the invoice reflects the documents were delivered to a residence in Chicago (d/e 165-3 at 9).

- $48.06 for delivery of documents from Ackerman, LLP to Timothy Sendek's residence. Petitioner claims the fee was for exemplification and costs of making copies (d/e 159-1 at 4) but the invoice references only a delivery (d/e 165-3 at 6). Petitioner provides no explanation of how this cost was necessary for the litigation.

The Court will also deduct from the Bill of Costs the $2,700 inadvertently taxed as costs when it should have been taxed as attorneys' fees. See discussion supra at 26. In addition, Respondent was served twice on September 16, 2020, with no explanation as to why, and Petitioner provided no invoices. See Chart (d/e 159-1 at 1) (listing charges of $83.20 and $93.20). Therefore, the Court will only allow one of the charges ($83.20). See

Summons Returned Executed (d/e 7 at 2) (reflecting $83.20

charge). After all calculations, the Court calculates costs at

$134,355.94.

### C. A Reduction in Attorneys' Fees is Necessary where a Full Award Would be Clearly Inappropriate Due to Respondent's Financial Circumstances

As noted above, prevailing petitioners are presumptively

entitled to an award of fees and expenses under § 9007 unless the

respondent shows an award would be clearly inappropriate. Rath,

898 F.3d at 1311. Respondent argues his good-faith belief in

retaining the children in the United States and his depleted

financial state strongly militates against an award of fees.

Respondent does not explicitly seek a reduction in costs on the

ground an award would be clearly inappropriate. See Resp. Br. at

29-32 (arguing for a reduction in the award of fees).

Respondent first argues that his good-faith belief in retaining

the children in the United States militates against an award of fees.

Respondent contends that every action he took was to protect his

children from the psychological and physical harms which would

befall them upon their return to Hong Kong. He claims he wanted

Petitioner to follow him to the United States and, absent that, he facilitated contact between the children and Petitioner.

A respondent can demonstrate that an award of fees and costs is clearly inappropriate where he had a good-faith belief that his actions in removing or retaining the child were legal or justified. Rath, 898 F.3d at 1311.  Here, Respondent has failed to make that showing.

Respondent did not behave like a person who believed his actions were legal or justified.  He acted surreptitiously by secretly recording Petitioner and filing for divorce in Illinois without telling Petitioner.  Respondent told Petitioner on August 17, 2020 that he would return to Hong Kong with the children (after having told her they would not return).  However, he did not disclose to Petitioner that he had filed for dissolution of the marriage in Illinois on August 12, 2020.  At trial, Respondent testified he did not decide he was not going to return to Hong Kong until the morning he and the children were supposed to fly to Hong Kong (August 19, 2020).  However, Petitioner was served with the divorce papers on August 19, 2020 while she was waiting for Respondent and the children to return to Hong Kong.  Respondent's actions show that, while he had

no intention of returning to Hong Kong, he engaged Petitioner in a series of discussions designed to lull her into a false sense of security so that he could try to gain an advantage by filing for divorce in Illinois.  See, e.g., Rath, 898 F.3d at 1312 (noting district court reasonably found the respondent's furtive removal of child and litigation tactics upon arrival suggested an intent to abscond and seek a more favorable resolution in a Florida state court).

Moreover, it appears Respondent constructed an after-the-fact justification for retaining the children in the United States.  The Court does not believe that Respondent was genuinely concerned with the political climate of Hong Kong but was unhappy in Hong Kong long before the passage of the National Security Law.  And, even if his concern were genuine, that does not justify retaining the children in the United States without the knowledge and consent of Petitioner.  See Neves v. Neves, 637 F. Supp. 2d 322, 345 (W.D.N.C. 2009) (finding asserted good faith did not render an award of fees and expenses "clearly inappropriate" as the racial prejudice experienced by the respondent and the children in Germany did not justify the abduction of the children without knowledge and consent of his estranged wife).

The cases finding the good-faith exception applied have noted that the respondent acted on a mistaken, but reasonable belief and did not abduct or retain the children with the hope of obtaining a more favorable custody determination.  See, e.g., Ozaltin v. Ozaltin, 708 F.3d 355, 375-76 (2d Cir. 2013) (finding the respondent had a reasonable basis to believe she could remove the children from Turkey based on orders from the Turkish court and where the respondent submitted to the Turkish courts with respect to all divorce and custody matters); Malmgren v. Malmgren, No. 5:18-CV-287-BO, 2019 WL 5092447, at *2 (E.D.N.C. 2019) (respondent demonstrated she acted in good faith where the respondent informed the petitioner she planned to stay with the child in the United States for a full year, the petitioner did not tell the respondent he would initiate judicial proceedings to return the child to Sweden, and the respondent never filed for a custody order in the United States);  Madrigal v. Tellez, No. EP-15-CF-181-KC, 2015 WL 5174076, at *20 (W.D. Tex. Sept. 2, 2015)(finding award of fees and costs would be clearly inappropriate where the petitioner came before the court with unclean hands and there was no indication the respondent retained the children "in the United States with the

hope of obtaining a more favorable custody determination");

Mendoza v. Silva 987 F. Supp. 2d 910, 916-17 (N.D. Iowa 2014)

(finding award clearly inappropriate where the respondent had a

mistaken but good faith belief the parties had agreed he would take

the children to the United States to attend school). Here,

Respondent did not act on a mistaken but reasonable belief, and he

retained the children with the hope of obtaining a more favorable

custody determination in the United States.

Respondent also argues his strained financial circumstances

warrant a reduction or elimination of payment for fees. An award is

clearly inappropriate where the respondent shows the award would

impose such a financial hardship that it would significantly impair

the respondent's ability to care for the child. Rath, 898 F.3d at

1311.

Respondent asserts he has slightly over $100,000 in liquid,

non-retirement assets and has not yet secured employment.

Respondent also complains the parties are involved in divorce

litigation in Hong Kong for which Respondent must hire attorneys

and that an award of fees and costs would ensure he lacks any

representation in those proceedings.

Respondent's affidavit reflects he has over $100,000 in
nonretirement financial assets and retirement assets of over
$600,000 (not including a defined benefit qualified pension plan
with a monthly estimated payment of $825.42 beginning May 1,
2036).  Resp. Aff. ¶¶ 3, 5 (d/e 162).  He has investments in five
startup companies, with only one expected to have some value.  It is
unknown if the value of that one will exceed the original $35,000
investment.  Id. ¶ 6.  Respondent owns no real estate but owns a
2019 Dodge Durango GT, the EpicGem trademark (value unknown),
personal items, and baseball card, coin, and stamp collections
(value unknown).  Id. ¶ 7.  His liabilities include credit card debt of
$1,034.26, an auto loan of $26,605.08, student loan debt of
$31,229.14, attorneys' fees due in this case in the amount of
$110,123.03 (excluding fees incurred after April 30, 2021 and not
yet invoiced), and attorneys' fees due to counsel in the Hong Kong
case (not yet invoiced).  Id. ¶ 4.  At the time of filing the affidavit,
Respondent had secured only one offer of employment as a financial
manager with an annual salary of $60,000, after applying for 42
positions in California, Florida, Illinois, New York, Texas,
Washington, and the United Kingdom since April 27, 2021.  Id. ¶ 8.

Petitioner argues Respondent does not focus his argument for a reduction of the fee award on the children or his inability to support the children but rather on his self-created financial circumstances where he spent in excess of $1 million "to support his abduction of the children." Pet. Reply at 5 (d/e 165). Petitioner further argues Respondent's affidavit shows he has the financial resources to pay the award, as he has in excess of $715,000 in financial and retirement accounts, holds investments in start-up companies, and is arguably underemployed as a financial manager despite his Ivy league education and training and experience as an attorney at Kirkland and Ellis. Finally, Petitioner argues there is no evidence the children would be substantially adversely impacted by the award, and this is not a case where Respondent would be returning to Hong Kong to care for the children.

The Court finds that Respondent's financial position does warrant some reduction in the amount of fees sought but does not justify an award of no fees or a reduction in costs. Respondent has a good earning potential. According to his testimony at trial, Respondent is 50 years old. He holds a bachelor's degree in accounting and a master's degree in taxation from the University of

Illinois at Urbana/Champaign, a law degree from Columbia
University Law School, and a business degree from the Wharton
School of the University of Pennsylvania.  Petitioner also has some
assets, including retirement funds totaling over $600,000.

However, the Court recognizes Respondent will have
significant costs related to the Hong Kong litigation and will have an
obligation to support the children regardless of who ultimately is
awarded custody.  See, e.g.,  Hart v. Anderson, No. GJH-19-2601,
2021 WL 2826774, at * 5 (D. Md. July 7, 2021) (noting the financial
hardship exception applies where an award would impair the
respondent's ability to care for the child, which includes the
capacity to provide financial support, visit the child, and conduct
custody proceedings);  Mendoza, 987 F. Supp. 2d at 917 (noting, in
part, that making the respondent pay attorney's fees would interfere
with his ability to provide other support to his children where the
respondent made $9 per hour and had no other assets from which
the fee award could be satisfied).  A reduction balances the needs to
deter Respondent and others from absconding with children and to
alleviate Petitioner's burden with the need to ensure Respondent

has sufficient assets to litigate the case in Hong Kong and provide support for his children.

After careful consideration of the factors in this case and the equitable principles, the Court concludes that a reduction of 25% ($103,644.50) of the attorneys' fees award is appropriate, resulting in an award of $310,933.50.  The amount of costs will not be reduced.

### D.   Plaintiff is Not Entitled to a Temporary Restraining Order

Petitioner seeks a temporary restraining order limiting non-essential spending of Respondent's assets.  Petitioner asks the Court to enter an order temporarily restraining and enjoining Respondent from transferring, concealing, or otherwise disposing of funds contained in any financial accounts, except for the payment of his daily living expenses, to protect Petitioner's rights to recover attorney's fees and costs she incurred to secure the return of the children to Hong Kong. She asserts that without the issuance of such order, any order by this Court awarding her attorney's fees and costs would likely be meaningless because Respondent will deplete his resources to avoid his obligation.

Other than citing Federal Rule of Civil Procedure 65 (injunctions and restraining orders) and a case identifying the standard for a preliminary injunction, Petitioner cites no authority for the relief she seeks.  In her reply, Petitioner specifically denies seeking relief under Federal Rule of Civil Procedure 64.  Pet. Reply at 22 (d/e 165); <u>see</u> Fed.R.Civ.P. 64 (allowing a federal court to grant certain provisional remedies in accordance with State law); <u>see also</u> Resp. Br. at 49-53 (d/e 161) (explaining that State law does not provide the relief sought).

It is well-established that a district court lacks authority to enter a preliminary injunction preventing a party from disposing of assets pending adjudication of a claim for money damages where no lien or equitable interest is claimed.  <u>See</u> <u>Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.</u>, 527 U.S. 308, 333 (1999); see also <u>Oak Leaf Outdoors, Inc. v. Double Dragon Int'l, Inc.</u>, 812 F. Supp. 2d 944, 946-49 (C.D. Ill. 2011) (finding court was without authority to grant the defendant's request for a preliminary injunction to create a constructive trust or escrow for the amount of its counterclaims or otherwise impose an asset freeze against the

plaintiff).  Because Petitioner is not entitled to the relief sought, her request for a temporary restraining order is denied.

## IV. CONCLUSION

For the reasons stated, Petitioner's Motion for Attorneys' Fees and Costs Pursuant to 22 U.S.C. § 9007(b)(3) (d/e 154) and Amended Bill of Costs (d/e 159) is GRANTED IN PART.  Respondent shall reimburse Petitioner $310,933.50 in attorneys' fees and $134,355.95 in costs.  The Clerk is DIRECTED to enter judgment as follows:

> **IT IS ORDERED AND ADJUDGED that the children's habitual residence is Hong Kong, Respondent Michel Dale Debolt wrongfully retained the children in the United States, Respondent Michel Dale Debolt failed to establish any affirmative defense to the return of the children, and the children, T.D. and A.D., must be returned to Hong Kong.  It is further ordered that Petitioner Chung Chui Wan shall recover from Respondent Michel Dale Debolt $310,933.50 in attorneys' fees and $134,355.95 in costs for a total of $445,289.45.**

THIS CASE IS CLOSED.

**ENTERED: August 9, 2021**

**FOR THE COURT:**

_s/Sue E. Myerscough_
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**